# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

CHRISTOPHER ALLEN EDWARDS (1),

      Defendant.

Case No. 21-cr-255 (NEB/ECW)

**ORDER AND**
**REPORT & RECOMMENDATION**

This matter is before the Court on Defendant Christopher Allen Edwards' Motion to Suppress Evidence from Searches and Seizure (Dkt. 38) and Motion for Franks Hearing (Dkt. 51). This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. The parties have agreed to have the motions decided on the papers without a hearing. (Dkt. 47.)

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Defendant Christopher Allen Edwards is charged by Indictment with Conspiracy to Distribute Controlled Substances and Possession with Intent to Distribute Controlled Substances, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.[1] (Dkt. 1.) Edwards seeks to suppress evidence seized as the result of following search warrants:

    (1)    GPS tracker warrant for a Dodge Charger issued on February 9, 2021 (Gov't Ex. 1);

---

[1]    Co-Defendant Chloe Michelle Johnson was also indicted on the same counts and has since entered into a plea agreement. (Dkts. 1, 60.)

(2)     GPS tracker warrant for an Audi Q5 issued on July 1, 2021 (Gov't Ex. 2);

(3)     A second GPS tracker warrant for the Audi Q5 issued on August 26, 2021 (Gov't Ex. 3);

(4)     GPS tracker warrant for a Jeep Compass rental vehicle issued on October 13, 2021 (Gov't Ex. 4); and

(5)     An October 15, 2021 search warrant authorizing the search of Edwards' person, the person of Chloe Michelle Edwards, a residence in Stewartville, Minnesota, an apartment residence in Rochester, Minnesota, the Audi Q5, and the Jeep Compass rental vehicle. (Gov't Ex. 5).[2]

Edwards asserts that the applications for the GPS search warrants (Exhibits 1-4), which seek evidence of "possible violations of Minnesota Statutes relating to Controlled Substance Crimes-trafficking and sales of Heroin and Methamphetamine," are in "large measure. . . identical." (Dkt. 39 at 4.) According to Edwards, these search warrants lacked sufficient probable cause because the only reference to cocaine was attributed to an inmate at the Olmsted County Adult Detention Center, who told police in August 2021 that Edwards was continuing to sell large quantities of heroin, methamphetamine, and cocaine. (Id.) Edwards argues logic suggests that this inmate was talking to police in the hopes of lenient treatment, and that the inmate does not rise to the level of a confidential reliable informant ("CRI"). (Id.) In addition, Edwards argues that although the search warrant applications contain mentions of CRIs, they have little to say about what makes them "reliable," with the possible exception of the first two search warrants, where there

---

[2]     The applications and the search warrants are also attached by Edwards in support of his motions. (Dkts. 39-2, 39-3, 39-4, 39-5, 39-6.)

is a statement that a CRI has provided information that has led to the arrest of at least three people, and other statements that have been corroborated by surveillance. (*Id.* at 5.) Edwards also complains of stale tips from 2019. (*Id.*)

As to the search warrant at Exhibit 5, Edwards argues that authorization of a search warrant for his person and Chloe Johnson's person, vehicles, and premises had "the effect of diluting the necessary probable cause." (*Id.* at 6.) Moreover, other than a mention of an inmate's assertion that Edwards was dealing with cocaine, Edwards argues that there is nothing linking him to cocaine. (*Id.*) Edwards contends that there is only speculation of trafficking based on surveillance, and that the stops of his person mention the recovery of a "small amount of marijuana," but no mention of the recovery of methamphetamine, heroin, or cocaine. (*Id.* at 6-7.)

In sum, Edwards argues that the Government failed to establish a nexus between his home, person, and cars and criminal activity, and that the evidence in support of the warrant at Exhibit 5 is stale given that the police learned that Edwards was associated with the use and sale of heroin and methamphetamine in December 2020, yet the first tracking warrant at Exhibit 1 was not issued until February 2021. (*Id.* at 8-10.)

With respect to the *Franks* Motion, it is Edwards' contention that he has made a substantial preliminary showing required by *Franks*. According to Edwards, while the search warrant applications make references to CRIs, only two applications attempt to establish the CRI's reliability based upon prior activity, and references to the CRI's reliability are absent. (Dkt. 51 at 2-4.) In his reply in support of a *Franks* hearing, Edwards also made a number of arguments, including the following reproduced below:

1.    The police improperly determined Mr. Edwards' identity through picture trades and an overly suggestive single photo spread.

2.    The police distorted the public record of Mr. Edwards' interactions with the police by inflating minor marijuana cases into "narcotics related law enforcement calls."

3.    Recitals of past reliability, i.e., the provision of leads resulting in arrests, occur only in the first two applications for tracking orders, and are omitted entirely from the remaining applications when a CRI is mentioned. This omission is particularly telling in connection with application 5 (Altman Affidavit Exhibit 5), which was a compilation of the previous four applications and presumably the only one reviewed by the State court judge on October 15, 2021.

4.    There was no indication of how many CRIs were involved. If there was more than one CRI, that fact severely undercuts an assertion of past reliability.

5.    The police talked to a jail inmate who "advised Christopher Edwards is continuing to sell large quantities of heroin, methamphetamine, and cocaine." This reference to cocaine is the only reference in all the applications connecting Mr. Edwards with cocaine, an allegation that was apparently not corroborated and certainly not highlighted for the reviewing court.

6.    Additionally, the applicant advises of a controlled buy between Chloe Johnson and a CRI. There is no mention of Mr. Edwards not being present at this transaction or otherwise knowledgeable about this transaction.

(Dkt. 61 at 8-9.)

The Government counters that the search warrants are supported by sufficient probable cause and that even if probable cause supporting a search warrant is found lacking on subsequent review, the evidence seized is still not subject to suppression because the officers' reliance on the search warrant was reasonable under the exception set forth by *United States v. Leon*, 468 U.S. 897 (1984).  (Dkt. 49.)  With respect to the

*Franks* Motion, the Government counters that Defendant has conflated arguments that are relevant to probable cause showings with *Franks* issues; Defendant cites no evidence that any information was withheld deliberately or recklessly; and he fails to explain how the applications would not support probable cause if supplemented with this information. (Dkt. 57.)

The Court will proceed with addressing each of the search warrants as to both motions.

## II.   <u>LEGAL STANDARD</u>

Ordinarily, searches pursuant to a warrant are reviewed to determine if there was probable cause for the search in the search warrant application and affidavit. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Gates*, 462 U.S. at 238). The task of a court issuing a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. "Placement of a GPS tracking device on a vehicle is a 'search' within the meaning of the Fourth Amendment, requiring probable cause and a warrant." *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016) (citation omitted).

Probable cause is a fluid concept that focuses on 'the factual and practical

considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). In reviewing the decision of the issuing court, the duty of the reviewing court is simply to ensure that the court had a substantial basis for concluding that probable cause existed. *See Gates*, 462 U.S. at 238-39 (citation omitted); *see also LaMorie*, 100 F.3d at 552 (citation omitted) ("Our duty as a reviewing court is to ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed, and we owe substantial deference to the determination of probable cause by the issuing judge."). As to what this Court should consider when reviewing a search warrant for probable cause, "[w]hen the [issuing judge] relied solely on the affidavit presented to him, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citing *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999), quoting *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)); *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009) (quoting *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986)).

The proponent of a suppression motion on the basis of a Fourth Amendment violation bears "the burden of establishing that his . . . Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978).

Pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant may seek a hearing to challenge a search warrant on the ground that the supporting affidavit contains

factual misrepresentations or omissions relevant to the probable cause determination. *See United States v. Daigle*, 947 F.3d 1076, 1084 (8th Cir. 2020).[3] "'However, in order to merit a *Franks* hearing, a defendant must show both (1) that the affiant 'knowingly and intentionally' made false statements or made them in 'reckless disregard for the truth' and (2) if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause.'" *Id.* (cleaned up) (quoting *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013), quoting *Franks*, 438 U.S. at 155-56). This "requirement is not met lightly and requires a defendant to offer specific allegations along with supporting affidavits or similarly reliable statements." *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015) (citation omitted); *see also Franks*, 438 U.S. at 171 ("Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained."); *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998) ("A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing [under *Franks* ]."). Moreover, "[a] *Franks* hearing must be denied unless the defendant makes a **strong** initial showing of deliberate falsehood or reckless disregard of the truth." *United States v. Freeman*, 625

---

[3] The majority of courts within this District have treated a motion for a *Franks* hearing as a non-dispositive motion. *See, e.g.*, *United States v. Hari*, No. CR181501DWFHB, 2019 WL 7041849, at *1 (D. Minn. Dec. 20, 2019) ("Motions for *Franks* hearings are non-dispositive and, therefore, reviewed for clear error.") (citation omitted); *United States v. Mays*, Crim. No. 19-75, 2019 WL 4565636, at *4 (D. Minn. Sept. 20, 2019) (collecting cases). Here, the Court includes the request for a *Franks* hearing with the Report and Recommendation, as opposed to the other non-dispositive motions, because it is intertwined with the Motion to Suppress.

F.3d 1049, 1052 (8th Cir. 2010) (internal quotations and citation omitted) (emphasis added).

## III.   ANALYSIS

### A.   Search Warrant for GPS Tracker regarding the Dodge Charger - Minnesota License 680XXX (Gov't Ex. 1)

Applicant Z. Wagner, a Detective with the Olmsted County Sheriff's Office and a member of the Southeast MN Violent Crime Enforcement Team ("SMVCET") asserted in a February 8, 2021 supporting application for the tracking warrant for a Dodge Charger that there was an active investigation of Edwards with respect to controlled substance crimes, trafficking, and sales of heroin and methamphetamine.  (Dkt. 49-1 at 1.)

The search warrant application also provided the following information in support of the issuance of the tracking warrant:

> Within the past moth [sic] your affiant received information from multiple sources that Christopher Allen Edwards (DOB: XX/XX/XXXX) is associated in the use and sales of heroin and methamphetamine.
>
> Your affiant is familiar with the name Christopher Edwards from previous narcotics tips starting in 2019.
>
> Within the last week, your affiant received information from a Confidential Reliable Informant (CRI has provided information that has led to the arrest of at least three people. Information provided by the CRI on previous occasions has been corroborated by arrests, and surveillance by law enforcement) about a male who the CRI knows as "Pablo" and has seen supplying another smaller drug dealer. CRI sent your affiant pictures of "Pablo". Your affiant recognized "Pablo" as having likeness to Christopher Edwards. Your Affiant sent the CRI Edwards' most recently booking photo. CRI confirmed that "Pablo" and Christopher Edwards are the same person. CRI also advised that Edwards has bee[n] driving a reddish 4-door car to deliver controlled substances.

Your affiant drove by XXX 3rd St. SE, Stewartville MN known to be the residence for Christopher Edwards, and observed 680XXX parked in the driveway on February 1, 2021.

Since originally hearing information that Christopher Edwards sells narcotics, Edwards' vehicle 680XXX has been associated with multiple narcotics related law enforcement calls including the following:

20-17423 - report of suspicious activity, contacted by law enforcement, male from another associated vehicle immediately put a backpack away before talking with Police. Answers to Officer's questions did not add up, but nothing further.

20-37238 - report of suspicious activity including short term traffic at a residence.

20-900416 - Traffic stop, Edwards arrested for controlled substance possession, large number of US Currency and scale also located during vehicle search.

21-1899 - Traffic stop, vehicle search conducted, and small amount of marijuana located along with approximately $2,700 (all 20 dollar bills).

Your affiant believes that this warrant would assist law enforcement with their investigation into Christopher Edwards' illegal activity by establishing a real time location, as well as by establishing a pattern of locations, movements, and contacts with known associates who may also be involved in her [sic] criminal activity.

(Dkt. 49-1 at 1-2.)

In issuing the search warrant on February 8, 2021, the judge found that based on the information submitted in the application there was "reason to believe that information likely to be obtained by such installation and use is relevant to an on-going criminal investigation into violations of Felony sales of narcotics by" Edwards. (*Id.* at 4.)

As asserted previously, Edwards raises as a *Franks* issue the fact that the police allegedly improperly determined Edwards' identity through picture trades and an overly

suggestive single photo spread.  (Dkt. 61 at 8.)  The Court rejects this *Franks* argument as it fails to identify any deliberate falsehood or reckless disregard of the truth asserted.  In other words, the single photo spread was not kept from the issuing judge, therefore there is no *Franks* violation.  It appears that Edwards is arguing for "suppression" of the CRI's identification from the affidavits or for a *Franks* hearing, notwithstanding the failure to identify any misrepresentation or omission, on the ground that showing a single photo was impermissibly suggestive.  Even assuming this is a valid legal theory, the Due Process Clause requires suppression of evidence of eyewitness identification only if a pretrial "photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  *Simmons v. United States*, 390 U.S. 377, 384 (1968).  The Eighth Circuit has recognized "that use of single-photograph displays can be impermissibly suggestive."  *United States v. Smith*, 21 F.4th 510, 518 (8th Cir. 2021) (citation omitted).  Exceptions to such a finding include situations where there is not "a very substantial likelihood of irreparable misidentification."  *Id.* (citation omitted).  Although the Eighth Circuit has held single photo identifications to be impermissibly suggestive, it has also clarified a distinction where the witness is previously acquainted with the defendant.  *See United States v. Dobbs*, 449 F.3d 904, 909-10 (8th Cir. 2006).  "Unlike situations where the eyewitness is not previously familiar with the defendant, single photograph identifications by someone who already knows the defendant do not raise the same concerns of undue prejudice."  *United States v. Baez*, No. CR 17-135 (ADM/DTS), 2018 WL 6047802, at *5 (D. Minn.

Sept. 13, 2018), *R.&R. adopted*, 2018 WL 5307826 (D. Minn. Oct. 26, 2018), *aff'd*, 983 F.3d 1029 (8th Cir. 2020).

Here, it was the CRI who first provided the picture of Edwards to Detective Wagner, who then concluded that the person in the picture looked like Edwards. The CRI's previous familiarity with Edwards leads this Court to find there was not a very substantial likelihood of irreparable misidentification to warrant suppression.[4]

In addition, Edwards argues in connection with his *Franks* motion that police distorted the public record of his interactions with the police by inflating minor marijuana cases into "narcotics related law enforcement calls." (Dkt. 61 at 8.) Edwards provided the incident reports for the four stops associated with the Dodge Charger referenced in the search warrant application. (*See* Dkts. 61-2, 61-3, 61-4, 61-5.) These incident reports are consistent with the information contained in the search warrant application. As set forth above, the search warrant application states that during the 20-900416 traffic stop, "Edwards [was] arrested for controlled substance possession, large number of US Currency and scale also located during vehicle search." (Dkt. 49-1 at 2.) While the controlled substance at issue during the 20-900416 stop was marijuana, not methamphetamine or heroin, there is no dispute that marijuana is a controlled substance

---

[4]     Edwards complains that the application does not set forth where the CRI initially obtained the photo of Pablo who was allegedly Edwards. (Dkt. 39 at 7.) However, the "general rule is that an affidavit need only show facts adequate to support a finding of probable cause." *United States v. Ellison*, 793 F.2d 942, 947 (8th Cir. 1986). Since Edwards has not alleged nor provided evidence that the photo was initially provided by law enforcement, the Court does not find that Defendant is entitled to any relief in this regard.

and there is no dispute by Edwards that his stops by police in the Dodge Charger yielded large amounts of cash along with marijuana in two instances, and that a scale was found in one of those instances.[5]  *See United States v. Astorga*, No. CR 21-407 KG, 2021 WL 2942027, at *8 (D.N.M. July 13, 2021) (collecting cases) ("Digital scales in this context are commonly known as tools of the drug trafficking trade.").  In sum, the Court finds no deliberate falsehood or reckless disregard of the truth asserted as to the traffic stops that would entitle Edwards to a *Franks* hearing.[6]

Moreover, the Court finds that probable cause supports issuance of the GPS tracking warrant.  As to the CRI, the Eighth Circuit has found as follows with respect to reliance on informants for probable cause:

> When an affidavit in support of a search warrant is based upon information from an informant, the informant's "reliability, veracity, and basis of knowledge are relevant considerations—but not independent, essential elements—in finding probable cause." *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986). The key inquiry in such cases is whether the information is reliable. *United States v. Key*s, 721 F.3d 512, 518 (8th Cir. 2013). Such reliability can be established through independent corroboration or the informant's track record of providing trustworthy information. *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993).

*Faulkner*, 826 F.3d at 1144.  Here, the application states that the CRI provided

---

[5]    The application also states that the 21-1899 resulted in the discovery of a "small amount of marijuana" along with approximately $2,700.  (Dkt. 49-1 at 2.)

[6]    The Court notes that Edwards also argues that because the Government provided no reports of the CRI's statement, he is in no position to challenge the scope of agent surveillance, and that none of the CRI's pictures of "Pablo" were provided to the defense, and there was no information provided about their origin.  (Dkt. 61 at 2.)  However, a motion for a *Franks* is not a remedy for a lack of discovery and the burden remains on him at this stage to show that the affiant knowingly and intentionally made false statements/omissions or made them in reckless disregard for the truth.

information leading to three arrests in the past, thereby establishing the CRI's track record of providing trustworthy information for the purposes of probable cause. *See United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002) ("The informant here had a track record of providing reliable information. Guida's affidavit stated that the informant had provided reliable information on at least two prior occasions and had returned stolen property to law enforcement officers. This information was sufficient to show reliability.") (citation omitted). The CRI's information coupled with information connecting the Dodge Charger to Edward and narcotics activity (albeit involving only marijuana) and the "information from multiple sources" received by Detective Wagner within the past month that Edwards was associated with the use and sales of heroin and methamphetamine, provided sufficient probable cause based on the totality of the circumstances that the vehicle's location would provide evidence of felony narcotics trafficking.

Based on the forgoing, the Court finds that Edward's Motion to Suppress should be denied as to the search warrant for GPS tracker regarding the Dodge Charger, and denies the Motion for a *Franks* hearing as to that warrant.[7]

---

[7] The Court notes that Edwards also complains that each of the search warrants at issue (Gov't Exs. 1-5) contains the assertion that the affiant is familiar with the name Christopher Edwards from previous narcotics tips starting in 2019, which is stale information. However, even assuming that this information is vague and stale, the proper course is to review the sufficiency of the warrants excluding this information. For the reasons stated in this Report and Recommendation the Court concludes that the issuance of the warrants is still supported by sufficient probable cause even without information regarding vague tips starting in 2019. *See United States v. Hernandez Leon*, 379 F.3d 1024, 1027 (8th Cir. 2004) ("The sufficiency of a warrant affidavit which contains information from an unlawful search is evaluated after deleting that information.").

**B.     The first GPS Tracker Warrant for the Audi Q5 - Minnesota License GRAXXX (Gov't Ex. 2)**

The supporting application for the July 1, 2021 tracking warrant for an Audi Q5, with Minnesota License GRAXXX, included in large part the information submitted in support of the tracking warrant for the Dodge Charger, *supra*, and provided the following additional information in support of its issuance:

> In February, 2021, your affiant applied for and was granted a search warrant to install and use a mobile tracking device on 680XXX. Your affiant was unable to locate 680XXX, and the aforementioned warrant was never executed.
>
> Since February, 2021, your affiant has continued to receive information from two separate sources that Christopher Edwards is still selling controlled substances. One tipster indicated that Christopher Edwards meets customers to sell them controlled substances at various locations, and was last seen driving a dark grey colored Audi SUV.
>
> Within the last week, your affiant met with a CRI who provided information that Christopher Edwards was seen at a hotel in Southwest Rochester, Minnesota. Inv. J. Johnson conducted surveillance at the hotel in Southwest Rochester within the last 48 hours and observed Christopher Edwards driving a dark colored Audi SUV bearing Minnesota license plate GRAXXX. Your affiant processed the Minnesota registration GRAXXX and observed the vehicle to be a 2016 Audi Q5, grey in color, registered to [A.W.] and Christopher Edwards.
>
> Your affiant believes that this warrant would assist law enforcement with their investigation into Christopher Edwards' illegal activity by establishing a real time location, as well as by establishing a pattern of locations, movements, and contacts with known associates who may also be involved in his criminal activity.

(Dkt. 49-2 at 2-3.)

In issuing the tracking warrant, the court found that based on the information submitted in the application there was a "reason to believe that information likely to be

obtained by such installation and use is relevant to on-going criminal investigation into violations of Felony sales of narcotics by" Edwards.  (*Id.* at 4.)

As to this search warrant, Edwards raises *Franks* issues because the tipster who "advised" that Edwards meets customers to sell them controlled substances at various locations, and was last seen driving a dark grey colored Audi SUV is unidentified and not a CRI, and based on the statement that "[w]ithin the last week, your affiant met with a CRI who provided information that Christopher Edwards was seen at a hotel in Southwest Rochester."  (Dkt. 51 at 2-3.)  According to Edwards, there is no assertion of CRI reliability, insufficient corroboration of the information, and no indication of whether there was more than one CRI.  (Dkt. 51 at 2-3; Dkt. 61 at 8-9.)

The Court rejects Edwards' arguments insofar as they relate to his *Franks* motion. None of the issues he identifies are claimed to constitute a false statement or omission made intentionally or with reckless disregard for the truth.  Further, as to probable cause, while the application does not set forth why the CRI and tipster were reliable, the failure to do so is not automatically determinative of reliability.  *See United States v. Brown*, 499 F.3d 817, 821 (8th Cir. 2007) ("Brown complains that the affidavit does not elaborate on the officer's basis for describing the CI as reliable.  While we agree that this would have been preferable, such elaboration is not essential for the affidavit to support a finding of probable cause.") (citation omitted).  Information from a CRI or tipster is sufficiently reliable if it is corroborated by other evidence.  *See United States v. Lucca*, 377 F.3d 927, 933 (8th Cir. 2004) (citing *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)). "Where some information is independently corroborated, it is permissible for the issuing

15

judge to conclude the informant and the remaining information provided are reliable, even if uncorroborated." *United States v. Evans*, 4 F.4th 633, 637 (8th Cir. 2021). "Even the corroboration of minor, innocent details" can be enough to support a finding of probable cause. *See United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001) (marks and citation omitted). Here, through their surveillance and investigation, the officers confirmed that Edwards was located at the hotel identified by the CRI and he was seen by officers driving in a grey Audi SUV[8] bearing Minnesota license plate GRAXXX, which they determined was registered to A.W. and Edwards. While these may be innocent details, they sufficiently corroborate the CRI's and tipster's information for the purposes of probable cause.

The information provided by the CRI with a reliable track record was that Edwards was trafficking controlled substances. This, in conjunction with the corroborated information from the tipster related to the use of a grey Audi SUV, the information regarding continued narcotics activity received from two separate sources since February 2021, Edwards' previous use of the Dodge Charger in narcotics activity as part of the stops more fully addressed in connection with Government Exhibit 1 (*see*

---

[8]     Edwards complains that he was not provided with information from the Government. Specifically, he asserts that "[t]here is no mention in the application of any following up of this information, e.g., review of hotel records to see if Mr. Edwards stayed there. There is no indication that surveillance photographs were taken." (Dkt. 61 at 4.) However, not every detail needs to be corroborated in a manner seen fit by a defendant. *See United States v. Gladney*, 48 F.3d 309, 313 (8th Cir. 1995) ("When an informant's information is at least partially corroborated . . . attacks upon credibility and reliability are not crucial to the finding of probable cause.") (quotations omitted).

*supra* Section III.A), and the confirmation that the grey Audi SUV was registered to

Edwards, provided sufficient probable cause for the issuance of the GPS tracking warrant

for the grey 2016 Audi Q5 with Minnesota license plate GRAXXX with respect to

evidence of narcotics trafficking involving Edwards.  Therefore, the Motion to Suppress

as it relates to the GPS tracking warrant for the Audi Q5 with Minnesota license plate

GRAXXX (Gov't Ex. 2) should be denied, and the Court denies the Motion for a *Franks*

hearing as to that warrant.

### C.    The August 26, 2012 Second GPS Tracker Warrant for the Audi Q5 (Gov't Ex. 3)

On August 26, 2012, applicant Joel Johnson, an Investigator with the

Olmsted County Sheriff's Office and a member of the SMVCET, applied for an

order authorizing the installation and use of a second mobile tracking device on

2016 Audi Q5 with license plate GRAXXX registered to [A.W.] and Edwards.

> In December of 2020 your affiant along with Det. Wagner of the OCSO and also a member of the SEMVCET received information that Christopher Allen Edwards DOB: XX/XX/XXX is associated in the use and sales of heroin and methamphetamine. Your affiant is familiar with Christopher Edwards from previous narcotics tips starting in 2019.

> In January of 2021, your affiant learned that a Confidential Reliable Informant (CRI) advised Det. Wagner s/he knew a male by the name of "Pablo" that is supplying a lower level drug dealer. The CRI sent Det. Wagner photographs of "Pablo". Det. Wagner recognized "Pablo" as having a likeness to Christopher Edwards. Det. Wagner sent the CRI Christopher Edwards' most recent booking photograph.  The CRI confirmed that "Pablo" and Christopher Edwards are in fact the same person. The CRI also advised Det. Wagner that Christopher Edwards has been driving a reddish 4-door car to deliver controlled substances.

> Through previous information learned your affiant knew Christopher Edwards to be associated with XXX 3rd ST SE Stewartville, MN 55976.

Your affiant traveled past the address on several occasions and observed a reddish Dodge Charger bearing MN LIC 680XXX there.

Since receiving information that Christopher Edwards sells narcotics, Edwards' vehicle 680XXX has been associated with multiple narcotics related law enforcement calls, including the following:

- 20-17423 - report of suspicious activity, contacted by law enforcement, male from another associated vehicle immediately put a backpack away before talking to police. Answers to Officer's questions did not add up, but nothing further.
- 20-37238 - Report of suspicious activity including short term traffic at a residence.
- 20-900416 - Traffic stop, Edwards was arrested for controlled substance possession, large amount of US Currency and a scale was also located during the vehicle search.
- 21-1899 - Traffic stop, vehicle search conducted and small amount of marijuana located along with approximately $2,700 in US Currency (All 20 dollar bills, which your affiant knows is consistent with the sales of controlled substances).

In February of 2021, Det. Wagner applied for and was granted a search warrant to apply a mobile tracking device on MN UC 680XXX. Shortly after receiving the signed search warrant your affiant and Det. Wagner learned Christopher Edwards was living at random locations and in different hotels. As a result, 680XXX was never located and the mobile tracking warrant was not executed.

Since the expiration of the mobile tracking warrant Det. Wagner has continued to receive information from two separate sources that Christopher Edwards is still selling controlled substances. One tipster indicated that Christopher Edwards meets customers at various locations and that he is driving a dark gray Audi SUV.

In late June of 2021 Det. Wagner and your affiant met with a CRI who provided information that Christopher Edwards is staying at a hotel in southwest Rochester. The CRI advised that also staying with Christopher Edwards is Chloe Michelle Johnson XX/XX/XXXX.

Based on the aforementioned information your affiant traveled to the hotel in southwest Rochester and conducted surveillance. While doing so your affiant observed Christopher Edwards driving a dark gray Audi SUV bearing MN LIC GRAXXX. Your affiant processed MN LIC GRAXXX through the

Department of Vehicle Services (DVS) and observed it to be a 2016 Audi Q5, gray in color, registered to [A.W.] XX/XX/XXXX and Christopher Edwards. Since observing the vehicle at the hotel your affiant has not been able to locate it.

Within the past week affiant met with an inmate in the Olmsted County Adult Detention Center (ADC).  The inmate advised Christopher Edwards is continuing to sell large quantities of heroin, methamphetamine, and cocaine. The inmate stated that Christopher Edwards is still driving a grey Audi SUV and living at The Gates of Rochester (XXXX 41st ST NW; Rochester, MN) with a female accomplice. Based on this information your affiant believes Christopher Edwards is continuing to drive the same gray Audi bearing MN LIC GRAXXX.

Based on the aforementioned information Inv. Waletzki of the OCSO and also a member of the SEMVCET contacted Rochester Public Utilities (RPU) to inquire into utility services for Christopher Edwards and/or Chloe Johnson. Inv. Waletzki learned that Chloe Johnson had just began services at XXXX 41st ST NW #XXX at the beginning of July. With this information your affiant traveled to the area several times over the past week. On 08/25/2021 your affiant observed Chloe Johnson outside of the H25-32 building with a dog. On 08/26/2021 your affiant observed MN LIC GRAXXX parked outside of the H25-32 building. Shortly after pulling into the lot your affiant observed Christopher Edwards exit the H25-32 building and get into the driver seat of MN LIC GRAXXX.

Your affiant believes this warrant would assist law enforcement with their investigation into Christopher Edwards' illegal activity by establishing a real time location, as well as by establishing a pattern of locations, movements, and contacts with unknown associates who may also be involved in his criminal activity.

(Dkt. 49-3 at 2-4.)

In issuing the search warrant on August 26, 2021, the judge found that based on the information submitted in the application there is "reason to believe that information likely to be obtained by such installation and use is relevant to an on-going criminal investigation into violations of Felony sales of narcotics by" Edwards.  (*Id.* at 6.)

In support of his *Franks* motion, Edwards asserts that there is no mention of surveillance photographs or inquiries at the hotel about Edwards and Johnson staying at the hotel.  (Dkt. 61 at 5.)  Edwards also takes issue with the application's failure to substantiate the allegation of cocaine sales via the information provided by the inmate informant.  (*Id.*)  Similarly, Edwards contends there is no discussion of how the inmate kept current or how he or she was privy to information regarding whether Edwards was still driving a grey Audi and was living with a woman at the Gates of Rochester.  (Dkt. 61 at 5-6.)  Defendant also asserts that the CRIs mentioned in the application lacked any mention of past reliability.  (Dkt. 51 at 2.)

Edwards is correct that unlike the first two warrants, there is no mention that the CRI who initially provided information about a drug dealer named "Pablo" had previously provided reliable information that led to arrests in three instances.  However, the Eighth Circuit has held that "we can infer by the designation of the informant as 'reliable' that he or she had provided such information in the past."  *Faulkner*, 826 F.3d at 1145.  This and the fact that the CRI provided a picture of Pablo that officers recognized as Edwards sufficiently corroborates the reliability of information provided by the CRI.  *Id.*

Regardless of this information, the application also contains information from a tipster and CRI that Edwards was driving a grey Audi and staying at a hotel, which was corroborated by law enforcement as set forth with respect to the first tracking warrant for the Audi, *supra*, and determined to be a 2016 Audi with Minnesota license plate GRAXXX, that was registered to Edwards.  In addition, the application contains

information regarding an in-person meeting between an inmate and Investigator Johnson, where the inmate advised that Edwards was continuing to sell large quantities of heroin, methamphetamine, and cocaine; that Edwards was still driving a grey Audi SUV; and that Edwards was living at The Gates of Rochester (XXXX 41st ST NW; Rochester, MN) with a female accomplice. This information was corroborated in part by law enforcement surveillance showing the Audi with Minnesota license plate GRAXXX at XXXX 41st ST NW, Rochester, MN, and Edwards coming out of a building at The Gates of Rochester's and getting into the driver seat of the Audi. Edwards claims that there is no mention of surveillance photographs or inquiries at the hotel about Edwards and Johnson staying at the hotel. (Dkt. 61 at 5.) Edwards takes issue with the failure of the application to substantiate this allegation about cocaine via the information provided by the inmate informant. (*Id.*) Similarly, Edwards contends there is no discussion of how the inmate kept current or how he was privy to information regarding whether Edwards was still driving a grey Audi and was living with a woman at the Gates of Rochester. (Dkt. 61 at 5-6.) As this Court has previously found (*supra*, section III.B), "[w]here some information is independently corroborated, it is permissible for the issuing judge to conclude the informant and the remaining information provided are reliable, even if uncorroborated." *Evans*, 4 F.4th at 637. "Even the corroboration of minor, innocent details" can be enough to support a finding of probable cause. *See Tyler*, 238 F.3d at 1039 (marks and citation omitted). In other words, the information from the inmate regarding the Audi and Edwards' residence at The Gates of Rochester was corroborated by officers' previous investigation into the Audi and the affiant's subsequent observation

of Edwards exiting a building at The Gates of Rochester and entry into the suspect Audi

at that location.  Further, the inmate's statement that Edwards was living at The Gates of

Rochester with a  female accomplice was corroborated by utility records showing that

Chloe Johnson had just begun services at a unit in The Gates of Rochester and the

affiant's observation of Chloe Johnson outside of the building in which that unit was

located (which was the same building the affiant observed Edwards exiting and getting

into the Audi).  This is sufficient corroboration of the information provided by the inmate

regarding Edwards' continued narcotics trafficking.  *See Faulkner*, 826 F.3d at 1145

("The corroborated information established that the CRI was providing accurate

information about verifiable details, and the fact that those corroborated details were not

about criminal activity does not subtract from the probable cause analysis.") (citation

omitted).  The Court notes that the fact that the inmate gave the information in person to

Investigator Johnson further bolstered the reliability of the information provided by the

inmate for probable cause purposes.[9]  *Id.* ("Additionally bolstering our conclusion is the

---

[9]     Edwards appears to be arguing the information from the inmate cannot support
probable cause as "[l]ogic suggests that this inmate was talking to police in the hopes of
lenient treatment."  (Dkt. 39 at 4.)  However, any failure to set forth what was promised
to the inmate does not affect this Court's decision as it relates to probable cause or the
necessity of the *Franks* hearing.  Judicial officers, such as the issuing judge in this case,
know that confidential informants are not model citizens and are aware of the possibility
that they may be seeking leniency for his or her own situation.  *See United States v. Hall*,
171 F.3d 1133, 1143 (8th Cir. 1999) ("Nor do we believe that the omission from the
affidavit of information about the confidential informant's contemporaneous arrest and
detention for possession of stolen property (and potential motive, therefore, to strike a
deal for herself by providing false information about the Hall brothers) compromised the
affidavit to such an extent that it could not have supported a finding of probable cause if
that fact had been included.  We have rejected such contentions in the past, concluding,
as a matter of law, that courts issuing search warrants are aware of the possibility that a

fact that the CRI provided information to the officer in person.").  Given the recent

information provided by the inmate and the surveillance showing Edwards still using the

Audi, the Court finds, based on the totality of circumstances, that probable cause existed

that the Audi's location would provide evidence of felony narcotics trafficking.  On this

basis and the basis that Edwards has failed to meet his burden to show an intentional or

reckless omission or representation in the application, the Court recommends denying

Edwards' Motion to Suppress as to the second GPS tracking warrant for the Audi SUV

with Minnesota License Plate GRAXXX and denies the Motion for a *Franks* hearing as

to that warrant.

**D.**     **The October 13, 2021 GPS Tracker Warrant for the 2021 Black Jeep Compass - Minnesota License Plate GWAXXX (Gov't Ex. 4)**

On October 13, 2021, Detective Wagner sought a GPS Tracker Warrant for a 2021

Black Jeep Compass with Minnesota license plate GWAXXX, registered to PV Holding

Corp.  The evidence in support of the issuance of the tracking warrant included in large

part the evidence provided in support of the GPS Tracker Warrant for the Audi Q5 (Gov't

Ex. 3).  The application also included the following supporting evidence for the issuance

of the GPS tracking warrant for the Jeep Compass:

> In late June of 2021 Inv. J. Johnson and your affiant met with a CRI who
> provided information that Christopher Edwards is staying at a hotel in
> southwest Rochester. The CRI advised that also staying with Christopher
> Edwards is Chloe Michelle Johnson XX/XX/XXXX. The CRI indicated that
> if we are able to find Chloe Johnson, we will likely find Christopher
> Edwards.

_____

confidential informant may be seeking leniency in his or her own situation.") (citation
omitted).

Based on the aforementioned information Inv. J. Johnson traveled to the hotel in southwest Rochester and conducted surveillance. While doing so Inv. J. Johnson observed Christopher Edwards driving a dark gray Audi SUV bearing MN LIC GRAXXX. Inv. J. Johnson processed MN LIC GRAXXX through the Department of Vehicle Services (DVS) and observed it to be a 2016 Audi 05, gray in color, registered to A.W. XX/XX/XXXX and Christopher Edwards at XXX 3rd ST SE Stewartville, MN 55976. After observing the vehicle at the hotel Inv. J. Johnson was not able to locate it again.

In August of 2021 Inv. J. Johnson met with an inmate in the Olmsted County Adult Detention Center (ADC). The inmate advised Christopher Edwards is continuing to sell large quantities of heroin, methamphetamine, and cocaine. The inmate stated that Christopher Edwards is still driving a grey Audi SUV and living at The Gates of Rochester (XXXX 41st ST NW; Rochester, MN) with a female accomplice. Based on this information Inv. J. Johnson believed Christopher Edwards was still driving the same gray Audi 05 bearing MN LIC GRAXXX.

Based on the aforementioned information Inv. Waletzki of the OCSO and also a member of the SEMVCET contacted Rochester Public Utilities (RPU) to inquire into utility services for Christopher Edwards and/or Chloe Johnson.  Inv. Waletzki learned that Chloe Johnson had just began services at XXXX 41st ST NW #HXX Rochester, MN 55901 (hereafter referred to as The Gates) at the beginning of July. This coincides with the last time I observed MN LIC GRAXXX at the hotel in southwest Rochester. With this information Inv. J. Johnson traveled to the area of The Gates several times over the next week trying to locate GRA399. On 08/25/2021 Inv. J. Johnson observed Chloe Johnson outside of the H25-32 building with a dog on a leash. On 08/26/2021 Inv. J. Johnson observed MN LIC GRAXXX parked outside of the H25-32 building.  Shortly after pulling into the parking lot Inv. J. Johnson observed Christopher Edwards exit the H25-32 building and get into the driver seat of MN LIC GRAXXX.

On 08/26/2021 Inv. J. Johnson received a signed search warrant for a mobile tracking device on MN LIC GRAXXX. Unable to locate MN LIC GRAXXX at The Gates your affiant along with Inv. J. Johnson traveled to XXX 3rd ST SE Stewartville, MN 55976 to try and locate the vehicle. XXX 3rd ST SE is the address listed on Christopher Edwards MN Driver's License along with the registration of MN LIC GRAXXX. XXX 3rd ST SE is also a listed address through in-house files for Christopher Edwards and a previously known address for him. The vehicle was located at the address and a mobile tracking device was installed.

Your affiant has learned the following information from Inv. J. Johnson who has monitored the mobile tracking device:

Since placing the mobile tracking device on GRAXXX Inv. J. Johnson has observed the following information of note.  The vehicle is almost always in motion from the hours of approximately 1400-0200. These travels consist of numerous stops throughout the day/night, many of which are short in duration. Your affiant knows through training and experience that this amount of travel along with short term stops throughout the travel is consistent with controlled substance dealing. Your affiant also notes that several of these stops appear to be in public places which your affiant knows is consistent with controlled substance dealing.

While reviewing the stops Inv. J. Johnson noted that MN LIC GRAXXX routinely ends its night at XXX 3rd ST SE in Stewartville. The vehicle remains at the address until approximately 1400 hours on most days before traveling back to Rochester. Once in Rochester Inv. J. Johnson observes the vehicle almost always travels directly to The Gates. Inv. J. Johnson also notes that throughout the vehicles travels between the hours of 1400 and 0200 the vehicle routinely stops back at The Gates sometimes for extended periods and sometimes for very short periods of time. Your affiant believes these continued stops at The Gates are to obtain controlled substances.

Through training and experience your affiant knows it is common for dealers of controlled substances not to have their entire supply on them in the event they are stopped and or arrested. Your affiant has also learned throughout the investigation that Christopher Edwards keeps his controlled substances at different locations as a way to hide it and/or distance himself from it.

Along with these routine trips around Rochester Inv. J. Johnson has observed the vehicle to have three other routine trips of note.  These trip locations consist of Albert Lea, MN, Lake City, MN, and Rushford, MN. The details of the trips are as follows:

• 08/30/2021: Lake City stopping in the XXX Blk of S Oak ST for approximately 20 minutes
• 08/31/2021: Albert Lea stopping in the XXXX Blk of Grand Ave for approximately 9 minutes
• 09/01/2021: Lake City stopping in the XXX Blk of S Oak ST for approximately 3 minutes
• 09/01/2021: Rushford stopping at Shawnee's Bar and Grill for approximately 7 minutes

• 09/03/2021: Lake City stopping in the XXX Blk of S Oak ST for approximately 3 minutes
• 09/03/2021: Albert Lea stopping in the XXXX Blk of Grand Ave for approximately 8 minutes and near XXX W College ST (Argon Bar) for approximately and hour and 4 minutes.
• 09/11/2021: Rushford stopping at Shawnee's Barr and Grill for approximately 2 minutes.
• 09/11/2021: Lake City stopping in the XXX BLK of S Oak ST for approximately 7 minutes.
• 09/11/2021: Albert Lea stopping near the Argon Bar for approximately 35 minutes
• 09/13/2021: Albert Lea stopping near the Argon Bar for approximately 45 minutes.

Your affiant noted that during most of these trips to outlying cities the stops are very short in duration and that they are the usually only stops being made. Through your affiants training and experience, the extended miles GRAXXX is traveling with such short turnaround times, the trips are likely controlled substance deliveries and/or pickups of larger quantities. Your affiant also notes that GRAXXX routinely stops at The Gates before leaving for these trips or after returning from the trips further indicating Christopher Edwards may be storing controlled substances and or proceeds from controlled substance sales at the residence of Chloe Johnson.

In mid-September your Inv. J. Johnson met with a CRI and spoke about Christopher Edwards. The CRI confirmed that Christopher Edwards is continuing to sell controlled substances and further confirmed that his female accomplice is Chloe Johnson. The CRI indicated that they reside at The Gates in the building near the pool and that Chloe Johnson had been driving a rental car.

Based on this information Inv. J. Johnson reviewed the mobile tracking device and observed MN LIC GRAXXX to have traveled to the Rochester International Airport on 09/07/2021, 09/08/2021, and 09/15/2021. On 09/08/2021 at approximately 2313 hours Inv. J. Johnson had observed MN LIC GRAXXX park at the gates. The vehicle remained parked there until approximately 1020 hours on 09/11/2021. Based on this information your affiant believed Christopher Edwards rented a vehicle while at the airport and tripped in the vehicle to a source state to obtain controlled substances. Through training and experience your affiant knows that traffickers of controlled substances often times rent cars to distance themselves and avoid detection by Law Enforcement during their travels.

On 09/15/2021 Inv. J. Johnson observed MN LIC GRAXXX was northbound out of Rochester towards Lake City. Inv. J. Johnson contacted Inv. M. Kleese of the Lake City Police Department and also a member of the SEMVCET and requested he conduct surveillance in the XXX Blk of S. Oak ST. Inv. Kleese took up a position of surveillance in the area and observed MN LIC GRAXXX pull into the driveway of XXX S Oak ST. The vehicle remained there for approximately 21 minutes. Inv. Kleese then observed a black male matching Christopher Edwards description exit to MN LIC GRAXXX and leave the area. MN LIC GRAXXX then travels back to Rochester directly to The Gates where it stopped for a short time before continuing to trip around Rochester.

In mid-September Inv. J. Johnson arranged to conduct a controlled buy from Chloe Johnson using a CRI. Investigators with the SEMVCET assisted with the controlled buy. The CRI contacted Chloe Johnson and requested to purchase a felony level amount of narcotics. The CRI arranged to buy the narcotics from Chloe Johnson near her residence (The Gates). Prior to the controlled buy, Inv. J. Johnson met with the CRI at a predetermined meet location. Inv. J. Johnson provided the CRI with prerecorded buy money and outfitted him/her with an audio/video transmitter so investigators could monitor the controlled buy. From the predetermined meet location, the CRI traveled to meet with Chloe Johnson. Surveillance officers maintained a visual of the CRI until s/he met with Chloe Johnson. While with Chloe Johnson surveillance officers observed a hand to hand transaction. After a brief interaction with Chloe Johnson the CRI traveled back to the predetermined meet location and turned over the narcotics to Inv. J. Johnson. Inv. J. Johnson took a brief statement from the CRI confirming the female s/he met with was in fact Chloe Johnson. Inv. J. Johnson transported the narcotics back to the Law Enforcement Center (LEC) and field tested them, receiving a presumptive positive test result.

On 09/17/2021 Inv. J. Johnson subpoenaed Avis/Budget for rental records associated with Christopher Edwards. The results indicated that Christopher Edwards in fact rented a vehicle on 09/08/2021, returning it on 09/15/2021. The vehicle was rented from the Rochester International Airport location and returned to the same location with the total miles put on being 4,012 miles. The number of miles put on the vehicle over the short period of time is consistent with a cross country trip to obtain controlled substances.

On 09/23/2021 Inv. J. Johnson observed MN LIC GRAXXX park at XXX 3rd ST SE. The vehicle remained at the address without moving until 09/27/2021. At approximately 2300 hours on 09/27/2021 the vehicle began moving again, traveling straight to The Gates. The vehicle remained at The

Gates for approximately 8 minutes. The vehicle then traveled to Bob's Trailer Park stopping for approximately 2 minutes before traveling back to Stewartville stopping for the night at 202 3rd ST SE in Stewartville.

On 09/29/2021 Inv. J. Johnson learned that Inv. Klees with the Lake City Police Department had conducted a trash pull at XXX S Oak ST in Lake City. Inv. Klees advised that based on the findings in the trash he was able to draft a narcotics search warrant for XXX S Oak St, which was signed by a judge.

On 09/30/2021 Inv. J. Johnson assisted with the execution of a knock and announce narcotics search warrant at XXX S Oak ST in Lake City. As a result of the search warrant investigators located approximately 40 grams of field tested presumptive positive methamphetamine. The occupants Daphne DJ Schick XX/XX/XXXX and James Edward Morrill XX/XX/XXXX were both arrested and charged with controlled substance related charges. After the arrest Inv. Klees advised Inv. J. Johnson the arrestees admitted to purchasing an ounce of methamphetamine from a mixed race male from Rochester the night before for $600.00. Your affiant knew Christopher Edward's vehicle to have traveled to Lake City to the XXX BLK of S Oak St the night before confirming your affiant's belief he is bringing a larger quantity of narcotics to the location.

On 10/01/2021 your affiant learned that Inv. Smith with the Houston County Sheriff's Office (HCSO) and also a member of the SEMVCET was going to be executing a narcotics search warrant at the residence of Sasha Marie Erdner XX/XX/XXXX. Sasha Erdner works at Shawnee's Bar and Grill in Rushford, MN and is believed to be the reason Christopher Edwards has traveled there in the past.

After the search warrant Inv. Smith advised Inv. J. Johnson, they located approximately 3.5 grams of methamphetamine and subsequently arrested Sasha Erdner who also admitted to daily use of heroin. Inv. Smith advised that while speaking with Sasha Erdner she admitted to having purchased ounces of methamphetamine from Christopher Edwards in the past at $500.00 an ounce. This further confirms your affiant's belief Christopher Edwards was traveling to Rushford to deliver a larger quantity of narcotics. Within the past 48 hours Inv. J. Johnson was in contact with Avis/Budget. Inv. J. Johnson learned that Christopher Edwards had arranged to pick up a rental car from Avis/Budget. Inv. J. Johnson learned the vehicle Christopher Edwards reserved is a 2021 Black Jeep Compass bearing MN LIC GWAXXX. Based on your affiant's investigation into Christopher Edwards and knowledge that he frequently rents vehicles your affiant believes this

28

vehicle is being rented for the purposes of traveling to obtain controlled substances.

(Dkt. 49-4 at 4-7.)

In issuing the search warrant on October 13, 2021, the issuing judge found based on the information submitted in the application "reason to believe that information likely to be obtained by such installation and use is relevant to an on-going criminal investigation into violations of Felony sales of narcotics by" Edwards. (*Id.* at 9.)

With respect to his Motion to Suppress and Motion for a *Franks* hearing, outside of the arguments already raised as to the previous search warrants, *see supra*, Edwards takes issue with what he claims is continued insufficient corroboration of informants as the investigation progressed from the facts contained in the previous warrants, including the assertion in the application that in "'mid-September your Inv. J. Johnson met with a CRI and spoke about Christopher Edwards. The CRI confirmed that Christopher Edwards is continuing to sell controlled substances and further confirmed that his female accomplice is Chloe Johnson'" and the description of a controlled buy involving a CRI and Chloe Johnson. (Dkt. 39 at 5-6; Dkt 51 at 3-4; Dkt. 61 at 6, 8-9.) In addition, Edwards notes that while the applicant advises of a controlled buy between Chloe Johnson and a CRI, there is no mention of Edwards not being present at this transaction or otherwise being knowledgeable about this transaction. (Dkt. 61 at 9.)

The application contains evidence from an inmate in August 2021 that Edwards was continuing to sell large quantities of heroin, methamphetamine, and cocaine, that Edwards is still driving a grey Audi SUV, and that Edwards was living at The Gates of

Rochester (XXXX 41st ST NW; Rochester, MN) with a female accomplice. (Dkt 49-4 at 4.) As set forth more fully above (*supra* Section III.C), the reliability of the information from the inmate was corroborated by the officer's investigation and surveillance in August 2021 when they learned from the utility company that Chloe Johnson had started utility services at the Gates of Rochester, XXXX 41st ST NW #HXX Rochester, MN 55901 and surveillance showed both Edwards and Johnson (and the Audi) outside the building of the unit in question and Edwards leaving that building and getting into the driver's seat of the Audi, Minnesota license plate GRAXXX. (*Id.*) Moreover, based on the tracking device for the Audi, Minnesota license plate GRAXXX, Detective Wagner stated in the application that based on his experience and training, many of the movements of the vehicle and duration through August and September 2021 were consistent with drug trafficking. (Dkt. 49-4 at 4-5.)

The application also contains information that Investigator Johnson met with a CRI in mid-September who confirmed that Edwards was continuing to sell controlled substances and further confirmed that his female accomplice was Chloe Johnson. (Dkt. 49-4 at 5.) The CRI indicated that they resided at The Gates in the building near the pool and that Chloe Johnson had been driving a rental car. (*Id.*) Contrary to Edwards' assertion, the application's failure to specifically identify the CRI's basis of knowledge does not undermine the existence of probable cause. An informant's reliability, veracity, and basis of knowledge "'are not entirely separate and independent requirements to be rigidly exacted in every case.'" *United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008) (quoting *Gates*, 462 U.S. at 230). The "core question" in assessing probable cause

based on information supplied by an informant is simply "whether the information is reliable." *United States v. O'Dell*, 766 F.3d 870, 874 (8th Cir. 2014). Here, not only were some of the details provided by the CRI Investigator Johnson spoke to in mid-September corroborated by the officer's previous information regarding Edwards and Chloe Johnson's residence at The Gates (which was further confirmed by the tracking information from the Audi), but in mid-September officers conducted surveillance of Edwards in the Audi, Minnesota license plate GRAXXX, and observed him arrive at a residence located at XXX Blk of S. Oak Street in Lake City, Minnesota. (Dkt. 49-4 at 6.) Again, the Audi, Minnesota license plate GRAXXX, was located at this residence on the night of September 29, 2021 according to tracking device information, and the following day, officers executed a search warrant for the residence where the occupants admitted to purchasing methamphetamine the night before from an unidentified male from Rochester. (*Id.* at 7.) Further, the application identified an October 1, 2021 narcotics search warrant executed at the residence of Sasha Marie Erdner. (*Id.*) Erdner worked at Shawnee's Bar and Grill in Rushford, Minnesota, and was believed to be the reason Edwards had traveled there in the past, which was consistent with the GPS tracking of the Audi. (*Id.*) Moreover, Erdner admitted to purchasing methamphetamine from Edwards in the past (*id.*), which buttresses her credibility, *see United States v. LaMorie*, 100 F.3d 547, 553 (8th Cir. 1996) (citing *United States v. Harris*, 403 U.S. 573, 583 (1971) ("The government also notes correctly that statements against the penal interest of an informant naturally carry considerable weight.").

31

As to the connection of narcotics with the 2021 Black Jeep Compass with Minnesota License Plate GWAXXX, tracking information for the Audi placed it at the Rochester International Airport on September 8, 2021 and subpoenaed rental records from Budget showed that Edwards rented a vehicle on September 8, 2021 and returned it to the same location on September 15, 2021, having driven 4,012 miles in the vehicle during that time.  According to Detective Wagner, the number of miles put on the vehicle over the short period of time is consistent with a cross country trip to obtain controlled substances.  (Dkt. 49-4 at 6.)  Detective Wagner's observation supports probable cause in this instance.  *See United States v. Terry*, 305 F.3d 818, 822-23 (8th Cir. 2002) (quoting *United States v. Searcy*, 181 F.3d 975, 981 (8th Cir. 1999)) ("[P]robable cause may be established by the observations of trained law enforcement officers or by circumstantial evidence.").

The tracking warrant application for the 2021 Black Jeep Compass was initiated based on information from Avis/Budget within the previous 48 hours that Edwards had reserved a 2021 Black Jeep Compass bearing Minnesota license plate GWAXXX.  (Dkt. 49-5 at 7.)

In light of the evidence of Edwards' continued trafficking of narcotics, even excluding the CRI's evidence of a controlled buy from Johnson; evidence of Edwards' use of vehicles for drug trafficking; and Detective Wagner's observations based on her training and experience regarding Edwards' previous use of a rental vehicle, the Court finds that based the totality of the circumstances, a reasonable person could believe there was a fair probability that evidence of a narcotics trafficking would be found by tracking

32

the location of the 2021 Black Jeep Compass bearing Minnesota license plate GWAXXX.

Based on this, and the fact that Edwards has not established his burden demonstrating an intentional or reckless omission or misrepresentation of fact material to probable cause, the Court finds that the Motion to Suppress should be denied as to the tracking warrant for the Black Jeep Compass and denies Edwards' Motion for a *Franks* hearing as to that warrant.

**E.    Search Warrant for Edwards and Johnson's Persons, Residences, and Vehicles (Gov't Ex. 5.)**

On October 15, 2021, Officer Joel Johnson applied for a search warrant to search Edwards' and Chloe Johnson's persons, residences located at XXX 3rd Street SE Stewartville, MN 55976 (to include any and all outbuildings and vehicles located on the property) (hereinafter "Stewartville Residence") and XXXX 41st ST NW #H-XX Rochester, MN 55901 (hereinafter "Rochester Residence"); the Grey Audi Q5 bearing Minnesota license plate GRAXXX; and a black Jeep Compass with Minnesota license plate GWAXXX.  (Dkt. 49-5 at 3.)  The application for the search warrant sought a number of items, including, but not limited to: controlled substances, including but not limited to heroin, methamphetamine, and cocaine; records; paraphernalia pertaining to drug distribution; currency; records; indica of occupancy; jewelry; cell phones; and keys to safes, safe deposit boxes, and rental storage lockers.  (*Id.* at 2.)

The basis for the issuance of the search warrant included the evidence set forth in support of the GPS tracking warrant for the 2021 Black Jeep Compass (Gov't Ex. 4), as well as the following additional information:

On 10/13/2021 Det. Wagner received a signed search warrant from the Honorable Judge Wallace for a mobile tracking warrant on MN LIC GWAXXX. With the signed search warrant Det. Wagner placed a mobile tracking device on MN LIC GWAXXX.

After placing the tracking device Det. Wagner took up a position of surveillance in the area of Avis/Budget. At approximately 1515 hours Det. Wagner observed Christopher Edwards arrive to pick up MN LIC GWAXXX. Also with Christopher Edwards was a female confirmed by Det. Wagner to be Chloe Johnson. Det. Wagner advised he observed Christopher Edwards leave in MN LIC GWAXXX and Chloe Johnson leave the lot in Christopher Edwards vehicle, MN LIC GRAXXX.

On 10/14/2021 your affiant reviewed the mobile tracking information for both vehicles. In doing so your affiant observed the MN LIC GWAXXX travel around Rochester for much of the night eventually stopping for the night at The Gates. Your affiant also observed MN LIC GRAXXX traveling around Rochester throughout the night eventually ending the night at XXX 3rd ST SE in Stewartville.

On 10/14/2021 at approximately 1059 hours your affiant observed MN LIC GRAXXX begin traveling north towards Rochester from Stewartville. Your affiant observed the vehicle travel straight to The Gates and park. At 1126 hours your affiant observed MN LIC GWAXXX begin traveling south on HWY 52. Your affiant continued to monitor the movements of the vehicle and as of 1243 hours the vehicle is southbound on I-35 in Iowa. Based on this information your affiant believes Christopher Edwards and Chloe Johnson are likely traveling together to obtain controlled substances from a source location.

Based on training and experience, your affiant knows the following: Often times drug sellers and users will have other kinds of controlled substances at their home dependent on what is available in the area. Drug sellers will often keep notes and information on customers either in written form or stored electronically on a variety of electronic storage devices (i.e.: PDA's, computers, cell phones, caller ID's, etc.). Drug sellers typically deal in cash. Your affiant would ask to be allowed to search for documents or papers that

show evidence of obtaining, secreting, transfer or expenditure of monies. Your affiant has found that people involved in the illegal drug trade will often take photographs or video of themselves (and conspirators) and/or large amounts of cash or the controlled substances. Drug sellers are often found to be in possession of weapons to protect themselves from other people involved in the drug trade or the police. Often drugs or money will be stored away from a residence at a location such as a rental storage business or safe deposit box. Because of the above your affiant asks that he be allowed to search for the items listed on the attached list.

(Dkt. 49-5 at 3-10.)

On October 15, 2021, Olmsted County District Judge Jacob C. Allen issued the search warrant. (*Id.* at 12-14.)

According to Edwards, evidence linking his home, person, and cars to criminal activity was sparse given that physical surveillance was infrequent and hit and miss. (Dkt. 39 at 8.) Edwards concedes that the mobile tracking devices increased sightings, but argues that the orders authorizing the placement of tracking devices were obtained with deficient information. (*Id.*) Edwards also takes the position that by seeking a search warrant for the residences, automobiles, his person, and Chloe Johnson's person, the necessary probable cause was somehow diluted.[10] (*Id.* at 6.) As to the search of the Rochester Residence, Edwards argues that it was based on speculation that Chloe Johnson's home was a stash house for Edwards, who, in the event he was apprehended,

---

[10]   Although Edwards argues the number of subjects of the search warrant had the effect of "diluting the necessary probable cause," the correct measure is whether the search warrant was supported by sufficient facts to support that "fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. In other words, the correct analysis is whether the facts in the application support a fair probability that contraband or evidence of a crime would be found on the persons, in the vehicles, and in the residences that were the subject of the search warrant.

did not want to have too much dope around him.  (*Id.* at 8.)  Edwards asserts that outside of the information from an inmate, there is no mention of his involvement with cocaine. (*Id.* at 6.)  Edwards further argues that evidence in the application for the search warrant was based on stale evidence, as it contained evidence that officers learned that Edwards was involved with the sale of narcotics in December 2020, and the first order for a tracker warrant was issued in February 2021 and never executed.  (Dkt. 39 at 9.)

As part of his Motion for a *Franks* hearing, Edwards continues to take issue with the use of uncorroborated CRIs and other informants (including an inmate) and reliance on Edwards' involvement in lower-level marijuana dealings and inflating them into narcotics enforcement calls.  (Dkt. 39 at 9; Dkt. 61 at 8-9.)  He further contends in his reply that the applicant advises of a controlled buy between Chloe Johnson and a CRI, but there is no mention of Edwards not being present at this transaction or otherwise being not knowledgeable about this transaction.[11]  (Dkt. 61 at 9.)

The Court finds that there was sufficient probable cause that evidence of narcotics trafficking would be found on Edwards' person, the two residences (Rochester and Stewartville Residences), the Audi with Minnesota license plate GRAXXX, and the Jeep Compass with Minnesota license plate GWAXXX.  There is evidence of Edwards'

---

[11]   The Court will not again address the reliance on CRIs and other informants, or the representations of the narcotics stops of Edwards involving marijuana that the Court has already addressed with respect to the first four search warrants.  Further, any argument that the search warrant is the fruit of illegal tracking warrants is rejected given this Court's previous recommendations as to the Motion to Suppress and Motion for a *Franks* hearing regarding first four warrants (Gov't Exs 1-4).  *See supra*, Sections III.A-D.

connection to the Rochester Residence by virtue of information from an inmate who provided corroborated information in August 2021 that Edwards was continuing to sell large quantities of heroin, methamphetamine, and cocaine[12] and residing at the Rochester Residence, along with officers' surveillance of Edwards' and Chloe Johnson's presence at the Rochester Residence at the end of August 2021.  (Dkt. 49-5 at 5.)  Officer investigation verified that Chloe Johnson began utility services at the Rochester Residence in July 2021.  (*Id.*)  In addition, Edwards was linked to the Stewartville Residence, as it was the address listed in his driver's license and a tracking device was installed on the Audi with Minnesota License Plate GRAXX (in part under his name) at the Stewartville Residence.  (*Id.*)  The tracking device as to the Audi registered to Edwards also showed that it routinely ended its night at the Stewartville Residence before traveling back to Rochester, almost always traveling directly to The Gates of Rochester where the Rochester Residence was located, sometimes for extended periods and sometime for short periods of time.  (*Id.* at 5-6.)  According to Officer Johnson, he believed these continued stops at The Gates of Rochester were to obtain controlled

---

[12]    Although Edwards notes that the inmate was the only source of information relating to cocaine, this does not change the reliability of the inmate's information based on corroboration.  Moreover, such an argument overlooks that the search warrants were for evidence of controlled substances or information related to felony sales of narcotics, which ultimately included, but was not limited to cocaine.  Further, there is no requirement under *Franks*, as suggested by Defendant (Dkt. 61 at 8-9) that an affiant "highlight" a particular piece of evidence in a search warrant application (particularly based on what was found as a result of the search, not what was known when applying for the warrant); all that *Franks* requires is that there not be an intentional/reckless misrepresentation or omission of fact.

substances and he knew through his training and experience that it is common for dealers of controlled substances not to have their entire supply on them in the event they are stopped and/or arrested.  (*Id.* at 6.)

Moreover, Officer Johnson arranged a controlled buy from Chloe Johnson in mid-September using a CRI near The Gates, which yielded a felony amount of narcotics.  (*Id.* at 7-8.)  While Edwards' absence from the controlled buy means that buy may carry less weight as to the search of Edwards' person (despite the evidence in the application of his involvement with Chloe Johnson with drug trafficking), the search warrant is also for Chloe Johnson's person and the Rochester Residence and this information is relevant to the probable cause finding as to these subjects of the search warrant.  The Court also rejects Edwards' *Franks* argument.  While Edwards asserts that the omission of his non-involvement in the controlled buy is important, a "[a] court must review the sufficiency of a search-warrant affidavit using a 'common sense' and not a 'hypertechnical' approach."  *United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007).  A plain meaning of the search warrant makes it clear that Chloe Johnson and not Edwards participated in the controlled buy, and Edwards has not identified any language suggesting he was present at that controlled buy.  Indeed, Edwards initially asserted in his *Franks* motion that the application "describ[ed] a controlled buy involving a CRI and Chloe Johnson." (Dkt. 51 at 3.)  It is disingenuous for Defendant to argue that there was a critical omission of his non-involvement given his own initial characterization of the application.

Further, in mid-September officers conducted surveillance of Edwards in the Audi, Minnesota license plate GRAXXX, and observed him arrive at a residence located at the

600 Block of S. Oak Street in Lake City, Minnesota.  (*Id.* at 7.)  Again, the Audi,
Minnesota license plate GRAXXX, was located at the 600 block of S. Oak Street in Lake
City, Minnesota on the of night September 29, 2021, and the following day officers
executed a search warrant for that residence where the occupants admitted to purchasing
methamphetamine the night before from an unidentified male from Rochester.  (*Id.* at 8.)
Moreover, the application identified an October 1, 2021 narcotics search warrant at the
residence of Sasha Marie Erdner, yielding methamphetamine.  (*Id.* at 8.)  Erdner worked
at Shawnee's Bar and Grill in Rushford, Minnesota and was believed to be the reason
Edwards had traveled there in the past, which was consistent with the GPS tracking of the
Audi, and showed the Audi located at this location twice in September.  (*Id.* at 6, 9.)
Indeed, Erdner admitted to purchasing methamphetamine from Edwards in the past.  (*Id.*
at 9.)  In addition, according to Officer Johnson, through his training and experience he
knew that it is common for dealers of controlled substances not to have their entire
supply on them in the event they are stopped and/or arrested, including their homes.  (*Id.*
at 6, 9.)

Given the contemporaneous evidence that Edwards and Chloe Johnson were
engaged in felony narcotics trafficking and connecting them to the Rochester and
Stewartville Residences, the Court finds probable cause existed not only to search
Edwards' person, but also the residences.

These statements regarding a continuous course of drug trafficking by Edwards
and his accomplice Chloe Johnson, their connection to the residences, and Officer
Johnson's belief, based on his training and experience, that evidence of drug trafficking

would be found at the residences, establish sufficient probable cause that the evidence sought by the warrant related to narcotics trafficking would be found at the Rochester and Stewartville Residences. *See, e.g.*, U*nited States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007) ("[W]e have found probable cause to exist in cases in which officers have stated that in their experience such an inference is appropriate and in which a supporting affidavit also described a defendant's continuous course of drug trafficking activity"); *United States v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000) ("In this case there was evidence that [the defendant] was engaged in a continuing course of criminal activity, and we believe that it could fairly be inferred that he was keeping a supply of drugs and perhaps other evidence relating to his drug dealing in his home.  Although, it is true that neither the informant nor the detective had actual knowledge that contraband was in [the defendant's] home, absolute certainty was not necessary: a fair probability is all that is required."); *see also United States v. Carpenter*, 341 F.3d 666, 671 (8th Cir. 2003) ("As a matter of common sense, it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence.").

As to the Audi Q5, given the information regarding continued narcotics activity; the traffic stops of Edwards in the Dodge Charger that resulted in the discovery of marijuana, large amounts of cash, and in one instance, a scale (Dkt. 49-5 at 4); and the evidence of Edwards' use of the Audi Q5, with Minnesota License GRAXXX, in narcotics trafficking based on the tracking device information, surveillance, and investigation contemporaneous to issuance of the warrant, the Court finds sufficient

probable cause for the issuance of the search warrant as to this vehicle.  With respect to the Black Jeep Compass, with Minnesota License GWAXXX, rented by Edwards, Officer Johnson provided that based on subpoenaed records, it was discovered that Edwards had previously rented a vehicle from the airport from Avis/Budget on September 8, 2021, and put over 4,000 miles on it before returning it on September 15, 2021, which was consistent with a cross-country trip to obtain narcotics.  (Dkt. 49-5 at 8.)  The Black Jeep Compass had also been rented by Edwards from Avis/Budget and officer surveillance showed it traveling southbound on Interstate 35, consistent with traveling to obtain controlled substance from a source location.  (*Id.* at 9.)  The use of a rental car is "common practice in the drug trade, indicat[ing] that the anticipated transaction was not an isolated deal, but part of a larger business."  *See United States v. Hodge*, 246 F.3d 301, 306 (3d Cir. 2001).  Given this information and evidence of Edwards' use of vehicles in his alleged narcotics trafficking, the Court finds that sufficient probable cause existed to believe that evidence of narcotic trafficking could be found in the Black Jeep Compass.

As set forth above, Edwards also makes a staleness argument because the application contained evidence that officers learned of Edwards' involvement with the sale of narcotics in December 2020, and the first order for a tracker warrant was issued in February 2021.  "While a lapse of time between the observations of a witness and the issuance of a search warrant may render probable cause fatally stale, there is no bright-line test for determining when information is stale."  *United States v. Gettel*, 474 F.3d 1081, 1086 (8th Cir. 2007) (cleaned up).  "A warrant becomes stale if the information supporting the warrant is not sufficiently close in time to the issuance of the warrant and

the subsequent search conducted so that probable cause can be said to exist as of the time of the search." *United States v. Ortiz-Cervantes*, 868 F.3d 695, 700 (8th Cir. 2017) (cleaned up). "The date of the occurrence of the facts relied upon in an affidavit is of importance in the determination of probable cause because untimely information may be deemed stale." *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007). "The passage of time is not necessarily the controlling factor in determining staleness, as other factors, such as the nature of the criminal activity involved and the kind of property subject to the search, must be considered." *Gettel*, 474 F.3d at 1086 (cleaned up).

The first warrant issued in this case was obtained on February 2021, based in part on information obtained by a CRI in December 2020. (Gov't Ex. 1.) However, the staleness argument ignores the ongoing narcotics investigation as reflected in the October 15, 2021 search warrant with evidence of trafficking occurring consistently from August 2021 through October 14, 2021. "[I]n investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale." *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998) (cleaned up). Given the totality of the circumstances, the Court finds that the information contained in the application for the October 15, 2021 Warrant was not stale.

For all of the reasons stated above, and because Edwards has failed to meet his burden to show an intentional or reckless omission or representation (much less one material to probable cause), the Court recommends denying Edwards' Motion to

Suppress and denies Edwards' Motion for a *Franks* hearing as to the October 15, 2021

Search Warrant (Gov't Ex. 5).

## F.   *Leon* Exception

Because the search warrants were supported by probable cause, the Court need not

determine whether the *Leon* good-faith exception should apply.  However, even if the

warrant lacked probable cause, the Court notes that officers' reliance on the warrant

would have been reasonable under *Leon*.

> Under the [*Leon*] good-faith exception, evidence seized pursuant to a search
> warrant that lacked probable cause is admissible if the executing officer's
> good-faith reliance on the warrant is objectively reasonable.  The good-faith
> inquiry is confined to the objectively ascertainable question whether a
> reasonably well trained officer would have known that the search was illegal
> despite the [issuing judge's] authorization.

*United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (alterations in original) (internal

quotations omitted).  The *Leon* exception also applies to situations where information in a

supporting affidavit is stale.  *See Gettel*, 474 F.3d at 1086 ("Moreover, even assuming

that the information in the affidavit was stale, the 'good faith' exception of [*Leon*] would

apply.").

Leon identified four situations in which an officer's reliance on a warrant would

be unreasonable: (1) when the affidavit or testimony supporting the warrant contained a

false statement made knowingly and intentionally or with reckless disregard for its truth,

thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his

judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so

lacking in indicia of probable cause as to render official belief in its existence entirely

unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid. *Id.* (citation omitted). With respect to the third exception, the Eighth Circuit explained: "'Entirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." *Proell*, 485 F.3d at 432 (quoting *United States v. Carpenter*, 341 F.3d 666, 670 (8th Cir. 2003)).

In this case, the Court, as set forth above, does not find that the applications at issue were intentionally or recklessly misleading, or that the issuing judge wholly abandoned his judicial role in issuing the search warrant. As to the remaining exceptions, the Court has already concluded that the warrant applications provided an adequate factual basis for the issuing judge to have found probable cause. Therefore, based on all the facts and circumstances of this case, it was not "entirely unreasonable" for law enforcement officers to rely on the issuance of the search warrants (Gov't Exs. 1-5).

## IV.   ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT:**

Defendant Christopher Allen Edwards' Motion for Franks Hearing (Dkt. 51) is **DENIED**.

## V.    <u>REPORT AND RECOMMENDATION</u>

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED**

**THAT:** Defendant Christopher Allen Edwards' Motion to Suppress Evidence from

Searches and Seizure (Dkt. 38) be **DENIED**.

DATED: June 21, 2022             *s/Elizabeth Cowan Wright*
                                          ELIZABETH COWAN WRIGHT
                                          United States Magistrate Judge

## <u>NOTICE</u>

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).