UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 21-CR-255-1 (NEB/ECW) |
| Plaintiff, | |
| v. | ORDER ACCEPTING REPORT AND RECOMMENDATION |
| CHRISTOPHER ALLEN EDWARDS, | |
| Defendant. | |

Christopher Allen Edwards was indicted on one count of conspiracy to distribute controlled substances and one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. Sections 841(a)(1), 841(b)(1)(B), and 846. (ECF No. 1.) Edwards moved to suppress evidence seized from five warrants and for a *Franks*[1] hearing. (ECF Nos. 38, 51.) In an Order and Report and Recommendation, United States Magistrate Judge Elizabeth Cowan Wright denied Edwards's motion for a *Franks* hearing and recommended denying Edwards's motion to suppress. (ECF No. 64 ("R&R") at 44–45.) Edwards objects to the R&R, including the denial of the *Franks* hearing. (ECF No. 68 ("Obj.").)

The Court has reviewed the R&R *de novo*. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3); D. Minn. LR 72.2(b)(3). Based on that *de novo* review, the Court overrules

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

Edwards's objection and accepts the R&R. The Court also affirms Judge Wright's denial of the *Franks* hearing.

## BACKGROUND

Neither party objects to the R&R's description of the factual background, so the Court incorporates those facts by reference. (R&R at 1–5.) Edwards seeks to suppress evidence obtained by five warrants: (1) a tracker warrant for a Dodge Charger (which was never installed); (2) a tracker warrant for an Audi Q5 (which was never installed); (3) a second tracker warrant for the Audi Q5; (4) a tracker warrant for a rented Jeep Compass; and (5) a search warrant for Edwards and his co-defendant Chloe Johnson, the Audi Q5, the rented Jeep, Edwards's residence in Stewartville, and Johnson's residence in Rochester ("Search Warrant"). (ECF Nos. 39-2–39-6 ("Exs. 1–5").) The applications for the warrants build on each other by including much of the same information, with additional information provided in later applications. The relevant portions of the applications at issue are discussed below.

## ANALYSIS

The Court first addresses Edwards's objections to the denial of the motion to suppress, then his objections to the denial of his motion for a *Franks* hearing.

## I.   Legal Standard for Probable Cause and *Leon* Good-Faith Exception

The R&R denied Edwards's motion to suppress because probable cause supported the issuance of the five warrants. The R&R also found that even without probable cause, the evidence is admissible under the *Leon* good-faith exception to the exclusionary rule.

*Probable cause*. The Fourth Amendment requires law enforcement to show probable cause, supported by oath or affirmation, before a search warrant is authorized. U.S. Const. amend. IV. Installing a GPS tracker on a car is a Fourth Amendment search requiring probable cause and a warrant. *United States v. Petruk*, 929 F.3d 952, 959 (8th Cir. 2019) (citing *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016)). Probable cause "exists when, under the totality of the circumstances, there is a fair probability that evidence of a crime will be found in a particular place." *Id.* (cleaned up, citation omitted). A reviewing court is to give the issuing judge's probable-cause determination great deference, confirming only that the judge "had a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). Courts consider the totality of the circumstances to determine whether the affidavit supporting a warrant is enough to establish probable cause. *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009).

Leon *good-faith exception*. The typical sanction for a Fourth Amendment violation is suppression of the evidentiary fruits of the violation. *United States v. Houston*, 665 F.3d 991, 994 (8th Cir. 2012). But this rule does not apply "when an officer acting with objective

3

good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 920 (1984)). Under the good-faith exception, disputed evidence is not suppressed if the officer acted "in objectively reasonable reliance on a subsequently invalidated search warrant." *Leon*, 468 U.S. at 922. Relevant here, an officer's reliance is not objectively reasonable when the affidavit supporting the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (citation omitted).

**II.     Edwards's Objections to the R&R**

Edwards raises fifteen objections to the R&R. His first objection—that the R&R incorrectly concluded that the appropriate standards were satisfied and the warrants were properly issued—is addressed with more specificity in his other objections, and thus is subsumed by them. (Objection #1.) For the reasons below, the Court concludes that the appropriate standards were satisfied and all five warrants were properly issued.

   *A.     Objections #2, #5, #6, and #15: Reliability of Informants*

Edwards objects to the R&R's conclusions about the reliability of the government's informants. "The statements of a reliable confidential informant are themselves sufficient to support probable cause for a search warrant." *Petruk*, 929 F.3d at 959 (alteration and citation omitted). "When an informant has provided reliable information in the past *or* where his tip was independently corroborated, a court may deem the informant's tip sufficiently reliable to support a probable cause determination." *Id.* (emphasis in original,

4

alteration and citation omitted). "Where some information is independently corroborated, it is permissible for the issuing judge to conclude the informant and the remaining information provided are reliable, even if uncorroborated." *United States v. Evans*, 4 F.4th 633, 637 (8th Cir. 2021). And while an "informant's 'reliability, veracity, and basis of knowledge are relevant considerations,'" "they are not 'independent, essential elements' to finding probable cause." *Petruk*, 929 F.3d at 960 (citations omitted).

*Objection #2.* Edwards objects to the R&R's conclusion about the reliability of the confidential reliable informant ("CRI") in several of the warrant applications. (*E.g.*, Ex. 1 at 124, Ex. 2 at 128.) The CRI had provided information about a male known as "Pablo" who he saw supplying another narcotics dealer, and gave Detective Z. Wagner photographs of "Pablo." (Ex. 1 at 124.) Wagner determined that "Pablo" was Edwards. (*Id.*) The CRI also advised that Edwards was using a reddish 4-door car to deliver controlled substances. (*Id.*) Edwards objects to the R&R's reliance on the application's statement that information from this CRI had led to three previous arrests. (*Id.*; Obj. at 4.) Even if this information had been omitted from the application (as it was in subsequent warrant applications, (*e.g.*, Ex. 3 at 139)), the CRI's information was independently corroborated. A maroon Dodge Charger with license plate number 680XXX was registered to Edwards. (Ex. 1 at 123.) The warrant applications include numerous law enforcement calls connecting that Dodge Charger to Edward and narcotics activity, and information "from multiple sources" that Edwards was linked to the use and sales of

5

heroin and methamphetamine. (*Id.* at 124.) Thus, the CRI's information was reliable enough to support a probable cause determination.

*Objection #5*. As for the application for the first Audi tracker warrant, Edwards objects to the conclusion that the CRI's statement (that Edwards was seen at a Rochester, Minnesota hotel) was sufficiently corroborated by an officer's surveillance at the hotel and observation that Edwards was driving of a grey Audi with license plate GRAXXX, which was registered to Edwards and A.W. (Ex. 2 at 128; R&R at 16.) The Court has reviewed the warrant application and finds that this information sufficiently corroborated the CRI's statement. *See United States v. Reed*, 25 F.4th 567, 570 (8th Cir. 2022) ("While it is true that some independent verification is required when a known informant is without a track record of reliability, corroboration of even minor or innocent details may be sufficient to establish probable cause." (internal citations omitted)).

*Objection #6.* As for the application for the second Audi tracker warrant, Edwards objects to the warrant application's reliance on a jail inmate's statement that Edwards was continuing to sell large quantities of heroine, methamphetamine, and cocaine. (Ex. 3 at 134.) Although the application does not reference the inmate's reliability, the inmate gave his statement in person, which bolsters his reliability. *See Faulkner*, 826 F.3d at 1145; *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002) (noting that an officer "had an opportunity to assess the informant's credibility because he gave his tip in person"). And officers corroborated some of the inmate's statements. The inmate stated that Edwards

was still driving a grey Audi and was living at The Gates of Rochester with a "female accomplice." (Ex. 3 at 134.) The officers confirmed that co-defendant Johnson had recently begun utility services at The Gates of Rochester, and had observed Johnson, Edwards, and Edwards's Audi outside the building at various times. (*Id.*) Given this corroborating information, the issuing judge could conclude that the other information provided by the inmate was reliable, even though it was not corroborated. *See Evans*, 4 F.4th at 637.

As noted above, the inmate claimed that Edwards was selling large quantities of heroine, methamphetamine, and cocaine. Edwards contends that there was no probable cause to believe that he was selling cocaine. But he offers no authority requiring that officers corroborate the type of illegal narcotics allegedly sold to establish probable cause. The warrants were issued in connection with "an on-going criminal investigation into violations of Felony sales of narcotics" by Edwards, and they were not specific to cocaine. (*E.g.*, Ex. 2 at 130; Ex. 3 at 136; *see* R&R at 37 n.12.) Reviewing the sufficiency of the warrant application "using a 'common sense' and not a 'hypertechnical' approach," the Court concludes that the application demonstrated probable cause. *United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007) (citation omitted).

*Objection #15.* Edwards maintains that the *Leon* good-faith exception to the exclusionary rule does not apply because "his improper identification and the serious questions about informant reliability" caused the warrant applications to be "so lacking in indicia of probable cause as to render official belief in its existence entirely

unreasonable." (Obj. at 10); *Leon*, 468 U.S. at 923. The Court disagrees. Based on a *de novo* review, the Court concludes that even if the warrants were not supported by probable cause, the warrant applications are not so deficient that the officers' reliance on them would be unreasonable. Thus, the evidence would still be admissible under the *Leon* good-faith exception.

### B.     *Objection #3: Incident Reports*

Edwards objects to the conclusion that his four incident reports associated with the Dodge Charger—two of which resulted in the recovery of a "small amount of marijuana"—buttressed probable cause. (*E.g.*, Ex. 1 at 124.) Edwards disregards that large amounts of cash were also recovered at the two stops involving narcotics, and a scale was recovered at one of them. (*Id.*) Large amounts of cash and scales are consistent with drug trafficking. *See generally United States v. Riedesel*, 987 F.2d 1383, 1391 (8th Cir. 1993) (noting the presence of drugs found in defendant's car and "the large amount of cash ($2600) found on [his] person at his arrest, which is consistent with drug trafficking"). Because these reports corroborate the CRI's information that Edwards was using the Dodge Charger for drug trafficking, this objection is overruled.

### C.     *Objection #4: Stale Tips*

Edwards maintains that warrant applications included the stale information of "previous narcotics tips starting in 2019." (*E.g.*, Ex. 1 at 124; Ex. 2 at 128; Ex. 3 at 133.) The R&R found that even if this information were stale, the issuance of the warrants is still

8

supported by probable cause without this information. (R&R at 13 n.7.) Edwards objects to this finding as a general principle. The Court agrees with the R&R that, given the totality of the circumstances, the plethora of other information in the warrant applications supports probable cause to issue each warrant.

### D.     Objections #7, #9, #10, and #11: Officer Conclusions

Edwards objects to the warrant applications' reliance on officers' conclusions. "In making a probable cause determination, '[l]aw enforcement officers have substantial latitude in interpreting and drawing inferences from factual circumstances.'" *United States v. Winarske*, 715 F.3d 1063, 1067 (8th Cir. 2013) (citation omitted); *see Keele*, 589 F.3d at 944 (holding that an issuing judge can rely on the "experienced opinion" of officers in finding probable cause).

*Objections #7 and #9.* Edwards challenges the officers' conclusions that he was engaged in drug trafficking based on the GPS tracking of his Audi and the fact that he rented a car and drove it four thousand miles in one week. The warrant application to track the rented Jeep includes GPS information from the Audi of several short trips to Lake City, Albert Lea, and Rushford. (Ex. 4 at 141.) Detective Wagner attests that, based on his training and experience, the extended miles the Audi was traveling with such short turnaround times suggested controlled substance deliveries and/or pickups of larger quantities. (*Id.*) The application also includes independent confirmation that Edwards rented a car and drove it over four thousand miles in a week. (*Id.* at 142.) Wagner attests

9

that, based on his training and experience, drug traffickers often rent cars to avoid law enforcement detection, and the number of miles put on the car in the short period is consistent with a cross country trip to obtain controlled substances. (*Id.*)

Issuing judges may rely on warrant applications that include opinions based on officers' training and experience. *See, e.g., United States v. Turner*, 953 F.3d 1017, 1020 (8th Cir. 2020) (finding that probable cause was supported by detective's knowledge through training and experience that drug traffickers use rental cars to transport drugs and money); *United States v. Juneau*, No. 19-CR-274 (WMW/KMM), 2021 WL 806368, at *2, *5 (D. Minn. Mar. 3, 2021) (finding that, based on GPS tracking of defendant's vehicles, the detective reasonably suspected that defendant's visits to a residence—"several of which occurred in the middle of the night and were only several minutes in duration"—were consistent with drug trafficking). Edwards suggests alternative explanations for his behavior, such as "visiting a sick relative and other innocent activities." (Obj. at 7.) But "probable cause does not require [officers] to rule out a suspect's innocent explanation for suspicious facts." *United States v. Meyer*, 19 F.4th 1028, 1032 (8th Cir. 2021) (citation omitted); *see United States v. Perry*, 908 F.3d 1126, 1129–30 (8th Cir. 2018) ("[Defendant's] possible innocent explanation did not require the officers to disregard other, less innocent possibilities or to ignore the other circumstances indicating guilt."). These objections are overruled.

*Objection #10.* Edwards contests the officer's stated belief that Edwards and Johnson were travelling together "to obtain controlled substances from a source location." (Ex. 5 at 154.) Aside from including the statement in a full-page block quote of the Search Warrant application, the R&R does not address the officer's statement. (R&R at 34.) The Court concludes that, even setting aside this information, given the totality of the circumstances, the other information in the application sufficiently supports probable cause for the Search Warrant.

*Objection #11.* Edwards objects to the Search Warrant application's listing of items "possibly associated with drug dealing, e.g., cash and computers." (Obj. at 8; *see* Ex. 5 at 147.) The list of items is based on the officer's training and experience that, for example, drug sellers "keep notes and information on customers" in written or electronic form, and "typically deal in cash." (Ex. 5 at 154.) Also, the Search Warrant describes Edwards's course of drug trafficking activity using corroborated informants' statements, officer observations, and GPS tracking information, among other things. (Ex. 5 *passim*.) This information is sufficient to support probable cause to issue a search warrant. *See United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007) (holding that probable cause exists when officers state that, "in their experience," "an inference that records, paraphernalia, and other evidence of drug trafficking exists at the trafficker's residence" is appropriate, and when the supporting affidavit also describes the trafficker's "continuous course of drug trafficking activity") (citing *United States v. Luloff,* 15 F.3d 763, 768 (8th Cir. 1994)); *see also*

11

*Riedesel*, 987 F.2d at 1391 (reasoning that a large amount of cash was "consistent with drug trafficking").

Leon *good-faith exception*. Even if the Search Warrant application did not establish a nexus for probable cause purposes, the *Leon* good-faith exception applies. Taken comprehensively, an officer could reasonably believe that the application sufficiently connected drug trafficking to Edwards, Johnson, their residences, the Audi, and the rented Jeep, to justify a search of these people, locations, and cars for drug trafficking evidence. *See Leon*, 468 U.S. at 922 (providing an exception for "objectively reasonable reliance on a subsequently invalidated search warrant").

### E. Objection #8: Controlled Buy from Johnson

In the warrant application for tracking the rented Jeep, Edwards objects to the use of the controlled buy with co-defendant Johnson and a CRI in determining probable cause. (Ex. 4 at 142; Obj. at 7–8 (citing R&R at 27).) He challenges the warrant application's failure to mention that Edwards was not present at the controlled buy. But the application gives no indication that Edwards was present at the buy, and he points to nothing in the application suggesting as much. The buy established that Johnson was dealing drugs, which corroborated information that she was Edwards's female accomplice. Thus, when considered with the other information in the warrant application, the controlled buy supports probable cause to issue the warrant. This objection is overruled.

F. *Objection #13: Search Warrant of Defendants' Residences*

Edwards objects to the finding of probable cause supporting the search of Edwards's and Johnson's residences to the extent that the R&R "recognizes the automatic application of a 'residence inference.'" (Obj. at 9 (citing R&R at 40).) The R&R recognized no such automatic inference. In *United States v. Ross*, the Eighth Circuit noted that it had "found probable cause to exist in cases in which officers have stated that in their experience such an inference is appropriate and in which a supporting affidavit also described a defendant's continuous course of drug trafficking activity." 487 F.3d at 1123. The R&R considered the information in the Search Warrant application[2] and found that Edwards's and Johnson's "continuous course" of drug trafficking, their connection to the residences, and the officer's belief that evidence of drug trafficking would be found at the residences "establish sufficient probable cause that the evidence sought by the warrant related to narcotics trafficking would be found at the Rochester and Stewartville Residences." (R&R at 39–40.) While the Search Warrant application does not include

---

[2] As the R&R correctly noted, the Search Warrant application included information suggesting drug trafficking activity, such as: the surveillance of Edwards' registered and rented cars; a search warrant conducted for a residence visited by Edwards where the occupants admitted to purchasing methamphetamine from an unidentified male from Rochester; the admission of a woman who purchased methamphetamine from Edwards; a search warrant of her residence that recovered methamphetamine; and GPS tracking of Edwards's Audi to her place of work in Rushford. (R&R at 38–39 (citing Ex. 5 at 153–54).) The application also included the attesting officer's knowledge, through training and experience, that drug dealers do not have their entire supply on them in the event they are stopped and arrested, and have other kinds of controlled substances in their homes depending on what is available in the area. (*Id.* (citing Ex. 5 at 151, 154).)

"actual knowledge that contraband was in [Edwards's] home, absolute certainty was not necessary: a fair probability is all that is required." *United States v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000) (noting that when "there was evidence that [defendant] was engaged in a continuing course of criminal activity, . . . it could fairly be inferred that he was keeping a supply of drugs and perhaps other evidence related to his drug dealing in his home").

Edwards argues that there was little or no evidence of ongoing drug dealing activity at the Stewartville residence, inferring that the application lacked a sufficient nexus between the contraband and the Stewartville residence to support the Search Warrant. *Tellez*, 217 F.3d at 550. But the application references the Stewartville residence in its information suggesting drug trafficking activity. For example, at 2300 hours on September 27, 2021, Edwards's Audi traveled to The Gates of Rochester for eight minutes, to Bob's Trailer Park for two minutes, then to the Stewartville residence. (Ex. 5 at 153.) And on October 14, 2021, the Audi traveled "around Rochester for much of the night eventually stopping for the night at" the Stewartville residence. (*Id.* at 154.) This behavior coupled with the detective's knowledge, training, and experience that drug dealers do not keep their entire supply on them in the event they are stopped and arrested, (*id.* at 151), as well as the other information in the application, support a finding of probable cause to issue the Search Warrant for the Stewartville residence.

Even if any of the five warrants were not supported by probable cause, the evidence would still be admissible under the *Leon* good-faith exception to the

exclusionary rule. None of Edwards's objections raises any reason to believe that the warrant applications were so lacking in indicia of probable cause as to render official belief in their existence entirely unreasonable, and this Court finds none.

**III.   Objections #12 and #14: *Franks* Hearing**

Edwards objects to the denial of a *Franks* hearing, arguing that "the inadequate showing of informant reliability" is an intentional or reckless omission or misrepresentation of material fact. (Objection #12.) Edwards also argues that he was improperly identified through "picture trades and a single photo spread." (Objection #14.) He maintains that he is entitled to a *Franks* hearing because the warrant applications lacked the photos or a report allowing him to evaluate the "previously acquainted" claim. (*Id.*)

"Motions for *Franks* hearings are non-dispositive and, therefore, reviewed for clear error." *United States v. Hari*, No. 18-CR-150(1) (DWF/HB), 2019 WL 7041849, at *1 (D. Minn. Dec. 20, 2019); *see United States v. Mays*, No. 19-CR-0075 (ECT/HB), 2019 WL 4565636, at *4 (D. Minn. Sept. 20, 2019) (collecting cases), *aff'd*, 993 F.3d 607 (8th Cir. 2021); Fed. R. Crim. P. 59(a); D. Minn. LR 72.2(a)(3). To obtain a *Franks* hearing, "a defendant must make 'a substantial preliminary showing' that an affidavit contains an intentional or reckless false statement or omission necessary to the probable cause finding." *United States v. Bradley*, 924 F.3d 476, 481 (8th Cir. 2019) (citation omitted). "This requirement 'is not lightly met.'" *Id.* (citation omitted). Edwards's attack on the warrant applications

"must be more than conclusory"; he must allege a "deliberate falsehood or [] reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *United States v. Williams*, 669 F.3d 903, 905 (8th Cir. 2012) (citing, among others, *Franks*, 438 U.S. at 171).

Edwards has failed to make the requisite preliminary showing that the officers intentionally or recklessly included a false statement or omission in the warrant applications because he submits no evidence that the officers acted deliberately or recklessly. As to whether the CRI and Edwards were previously acquainted, the warrant applications suggest as much because the CRI provided officers with photos of "Pablo" before officers provided the CRI with a photo of Edwards. (*E.g.*, Ex. 1 at 124); *see United States v. Dobbs*, 449 F.3d 904, 910 (8th Cir. 2006) ("[W]hen someone already familiar with a suspect is asked to comment on whether a recorded voice or image portrays the suspect, these concerns [about undue suggestiveness] are absent."). Edwards offers no evidence that the officers acted deliberately or recklessly by using the photos to confirm that "Pablo" was Edwards. And as for the informants' reliability, Edwards cites no false statement or omission supporting a *Franks* hearing, and the Court has found that an adequate showing of reliability has been made. As a result, the Court overrules these objections and affirms Judge Wright's denial of the motion for a *Franks* hearing.

## CONCLUSION

Based on all the files, records, and proceedings in this case, IT IS HEREBY ORDERED THAT:

1. Defendant's objection (ECF No. 68) to the Order and Report and Recommendation is OVERRULED;

2. The Order denying Defendant's motion for a *Franks* hearing (ECF No. 64) is AFFIRMED and the Report and Recommendation (*id.*) is ACCEPTED; and

3. Defendant's Motion to Suppress Evidence from Searches and Seizures (ECF No. 38) is DENIED.

Dated: August 18, 2022                        BY THE COURT:

                                              s/Nancy E. Brasel
                                              Nancy E. Brasel
                                              United States District Judge