UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-255 (NEB/ECW)

UNITED STATES OF AMERICA,

    Plaintiff,

v.                           **GOVERNMENT'S TRIAL BRIEF**

CHRISTOPHER ALLEN EDWARDS,

    Defendant.

The United States of America, by and through its undersigned attorneys, respectfully submits this trial brief in the above-referenced matter.

## INTRODUCTION

Defendant is charged in a two count Indictment. Count 1 charges conspiracy to distribute controlled substances including one kilogram or more of a mixture or substance containing cocaine; 100 grams or more of a mixture or substance containing heroin; and a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846. Count 2 charges possession with intent to distribute one kilogram or more of a mixture or substance containing cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B).

A summary of the anticipated proof at trial is below.

## FACTUAL BACKGROUND

### A. Initial Investigation and Use of Tracking Devices

In January 2021, police received information from a confidential informant that a man nicknamed "Pablo" was supplying drug dealers in the Rochester area.

The informant sent police photographs of "Pablo," who officers were able to identify as the defendant Christopher Edwards. Over the next several months, police conducted surveillance on the defendant and observed him driving an Audi SUV registered to him at a house on the 200 block of 3rd Street Southeast in Stewartville, Minnesota (the "Stewartville house").

In or about June 2021, an informant told police that the defendant was staying at The Gates of Rochester apartment complex ("the Gates apartment") with a female accomplice later identified as co-defendant Chloe Johnson ("Johnson"). Officers queried a public utilities database and learned that Johnson had recently begun service at Unit H29 of the Gates apartment. Officers also conducted physical surveillance during which they observed the defendant, Johnson, and the Audi at the Gates apartment.

Police obtained a tracking warrant for the defendant's Audi and installed a GPS tracking device on the vehicle. The tracking device showed the vehicle frequently travelling around the Rochester area with short-duration stops—activity consistent with drug dealing. The vehicle typically spent the overnight hours at the Stewartville house, then travelled to the Gates apartment and around the Rochester area during the day. The tracking device also showed the vehicle making several recurring, short-duration excursions to specific locations in Rushford and Lake City— routinely stopping at the Gates apartment before leaving for those destinations. Based on this information, investigators believed that defendant was delivering drugs and using the Gates apartment as a stash location.

In September 2021, police received CRI information that Johnson had been driving a rental car. The tracking device on the defendant's Audi showed trips to the Rochester Airport and a subpoena to Avis/Budget showed defendant had recently rented a vehicle for one week and put 4,000 miles on it. This information led investigators to believe that the defendant was renting cars at the airport and using them to travel out of state to pick up narcotics from his source of supply.

**B.     Controlled Buy from Co-defendant Johnson**

In mid-September 2021, investigators used a confidential informant to complete a controlled purchase of approximately one ounce of methamphetamine and 1.4 grams of heroin from Johnson for $1,000. Officers conducted surveillance of the purchase and saw Johnson walk back to the Gates apartment after the transaction.

**C.     Search Warrants on the Defendant's Customers**

On September 30, 2021, officers executed a search warrant at the address in Lake City identified through the tracking device on the defendant's vehicle. The search yielded approximately 40 grams of methamphetamine. The occupants of the address (D.S. and J.M.) told investigators that they had purchased an ounce of methamphetamine the night before from a person whose description was consistent with the defendant. Moreover, the tracking device on the defendant's vehicle showed it had been at that address the night before. A search warrant on one of D.S.'s phone showed (1) text messages from the night before the search warrant with a contact named "Pablo," (2) drug related text messages from July 2021 with the contact

3

"Pablo" (using a different phone number), and (3) a screenshot from picture of the defendant from the Minnesota DOC website (depicted below):



Similarly, on October 1, 2021, officers executed a search warrant on the defendant's suspected drug customer (S.E.) in Rushford, Minnesota. The search warrant revealed an 8-ball of methamphetamine. S.E. admitted to having purchased ounces of methamphetamine from the defendant.

D. **Seizure of Four Kilograms of Cocaine from Defendant**

On October 13, 2021, investigators learned that the defendant had rented a Jeep Compass from Avis/Budget. Officers obtained a search warrant for a tracking device on the rented Jeep and installed it while the vehicle was still in the possession

4

of the rental agency. Officers then conducted surveillance and saw the defendant and Johnson arrive to pick up the vehicle.

The next day, the tracking device showed the rented Jeep leaving the state of Minnesota and driving to the area of Austin, Texas. The vehicle stopped in the Austin area for a short time, before promptly turning around and heading back to Minnesota. Officers believed the defendant was travelling out-of-state to pick up drugs from his source of supply. Investigators therefore obtained search warrants for the rented Jeep, the defendant, and Johnson, as well as both the defendant's Stewartville house, and the Gates Apartment.

On October 16, 2021, officers located the rented Jeep as it crossed back into Minnesota and conducted a traffic stop to search the vehicle pursuant to the warrant. The defendant and Johnson were the only occupants. Inside the vehicle, police found a backpack with four kilograms of cocaine. Officers also found a CashApp card in the name $pablodollars2, a rental agreement for the Jeep in the defendant's name, a heat sealer/food saver packaging device, and several cellular phones. The defendant and Johnson were both arrested.

E.     **Search of the Stewartville house and Gates apartment**

On October 16, 2021, investigators searched the Gates apartment. A search of the apartment revealed concealed drugs, including over 200 grams of cocaine (packaged into ounces, half ounces, and "8-balls" for sale); about 130 grams of heroin/fentanyl; about 40 grams of fentanyl; and a small amount of meth. Officers also found approximately $4,029.05 in cash, including $310 in prerecorded buy funds

from the September controlled buy from Johnson. Finally, officers found digital scales and drug packaging and paraphernalia.

That same day, police searched the defendant's Stewartville house. The search revealed no controlled substances, but did locate $6,678 in cash, a money counter, and assorted jewelry and valuables. The search also revealed a key to a safety deposit box at a bank, which was later searched pursuant to a warrant and contained another $7,500 in cash.

## THE CHARGES AND OFFENSE ELEMENTS

Count 1 charges conspiracy to distribute controlled substances including one kilogram or more of a mixture or substance containing cocaine; 100 grams or more of a mixture or substance containing heroin; and a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846. This crime has three elements:

- One, during the period alleged in the indictment, two or more persons reached an agreement or understanding to distribute controlled substances, such as cocaine, heroin, or methamphetamine;
- Two, the defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and
- Three, at the time the defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding.

If the defendant is found guilty of this crime, the jury will also have to determine (1) whether his offense involved 500 grams or more of a mixture or substance containing cocaine,[1] and (2) whether his offense involved 100 grams or more of a mixture or substance containing heroin. These are the quantities necessary to trigger the five-year mandatory minimum and 40-year maximum penalties of 21 U.S.C. § 841(b)(1)(B).

Count 2 charges possession with intent to distribute one kilogram or more of a mixture or substance containing cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B). This crime has three elements:

- One, the defendant possessed some quantity of a mixture or substance containing cocaine;

- Two, the defendant knew that he possessed cocaine; and

- Three, the defendant intended to distribute some or all of the mixture or substance containing cocaine.

If the defendant is found guilty of this crime, the jury will also have to determine whether his offense involved 500 grams or more of a mixture or substance

---

[1] The Indictment alleged that both Count 1 and Count 2 involved *one kilogram* or more of a mixture or substance containing cocaine. (ECF 1). However, the statute requires only that the offense involved "500 grams or more" of a mixture or substance containing cocaine to trigger the penalties of 21 U.S.C. § 841(b)(1)(B). *See id.* § 841(b)(1)(B)(ii)(III). The government has advised the defendant that it intends to seek a superseding indictment prior to trial correcting this discrepancy between the Indictment and the statute and alleging that the offense involved 500 grams or more of cocaine (instead of one kilogram or more). The parties' proposed jury instructions and verdict form to the Court refer to "500 grams or more" rather than "one kilogram or more" in anticipation of this change.

containing cocaine to trigger the five-year mandatory minimum and 40-year maximum penalties of 21 U.S.C. § 841(b)(1)(B).

## THE TRIAL

### A. Counsel

The government will be represented at trial by the following attorneys:

| | |
|---|---|
| Nathan H. Nelson | Hillary Taylor |
| Assistant United States Attorney | Assistant United States Attorney |
| 300 South Fourth Street, Suite 600 | 300 South Fourth Street, Suite 600 |
| Minneapolis, MN 55415 | Minneapolis, MN 55415 |
| Email: nathan.nelson@usdoj.gov | Email: Hillary.Taylor@usdoj.gov |
| Phone: (612) 664-5622 (direct) | Phone: (612) 664-5644 (direct) |

### B. Length of Trial

The government estimates that its case-in-chief, inclusive of jury selection and charging, will last approximately four trial days.

### C. Witnesses

The government anticipates calling between 12-16 witnesses. The witnesses can be divided into the following general categories.

#### 1. *Law Enforcement Officers and Analysts*

Several law enforcements will testify regarding the investigation into the defendant, including conducting surveillance of defendant (including through the installation and monitoring tracking devices), conducting a controlled buy from the co-defendant, and obtaining search warrants for the rental vehicle and residences. The officers will also testify regarding their participation in the various searches and the recovery of drugs and other evidence.

### 2. *Laboratory Forensic Chemist*

A BCA Forensic Chemist will testify as an expert witness regarding his forensic testing of drugs seized during the course of this investigation. The Forensic Chemist will testify regarding the laboratory's procedures for receiving, storing, handling, testing, and analyzing the drug evidence. The chemist will also testify regarding his conclusion that the items recovered from the defendant and his co-conspirators contain controlled substances, including cocaine, heroin, fentanyl, and methamphetamine.

### 3. *Cooperating Witnesses*

The government anticipates calling one or more cooperating witnesses, who were co-conspirators and/or drug customers of the defendant, including D.S., J.M., S.E., and J.A. These witnesses are expected to testify regarding their purchase of drugs from the defendant, and any other knowledge of the defendant's drug dealing activities.

### 4. *Drug Expert*

The government anticipates calling a qualified law enforcement witness as an expert to testify regarding such matters as the nature and structure of the illegal drug business, methods used for transporting, packaging, storing, and selling narcotics, the cash nature of the business, methods used for avoiding detection by law enforcements, and the tools of the trade (such as scales, packaging devices, money counters, etc.). The witness will also testify regarding the nature and properties of controlled substances (including cocaine, heroin, fentanyl, and methamphetamine),

including how the drugs are made, where they are manufactured, how they are used, and their values.

### D. Exhibits

The government intends to introduce exhibits at trial that fall into the following general categories.

#### 1. *Controlled Substances*

The government intends to introduce drugs seized during the investigation, including four kilograms of cocaine seized from the defendant and his rental vehicle on October 16, 2021; quantities of cocaine, heroin, fentanyl, and methamphetamine seized from the Gates apartment on October 16, 2021, and quantities of heroin and methamphetamine seized from defendant's customers and/or co-conspirators in search warrants or controlled buys.

#### 2. *Other Physical Evidence Recovered from Search Warrants*

The government intends to offer other physical evidence seized during the searches of the defendant's rental car, the Stewartville house, and the Gates apartment, including digital scales, money counter, packaging devices, cellular phones, rental documentation, packaging material, and paraphernalia.

#### 3. *Photographic Evidence*

The government intends to offer a variety of photographic evidence, including photographs of the drug evidence and other physical evidence discovered in the searches. The government may also introduce photographs of surveillance conducted during the investigation of the case.

### *4.     Rental Car Documentation*

The government intends to offer documentation related to the defendant's rental of vehicles in September and October 2021, including his rental of the Jeep vehicle from which officers recovered the four kilograms of cocaine.

### *5.     GPS Location Evidence*

The government intends to offer maps or other exhibits illustrating or summarizing GPS location evidence obtained from the tracking devices installed on defendant's Audi and rented Jeep.

### *6.     Text Messages and Phone-related Evidence*

The government intends to introduce certain phone-related evidence, including text messages between defendant and D.S.  Cellular phones recovered from the defendant and Johnson are still in the process of being analyzed and the government may offer evidence from those phones should it become available prior to trial.

## THE 851 ENHANCEMENT - BIFURCATED TRIAL

At trial, the Court will need to address the Information filed by the United States pursuant to Title 21 U.S.C. § 851 contained in the Indictment.  This information alleges that the defendant committed the offenses in Counts 1 and 2, having been convicted of certain serious violent felonies, which serve to enhance his sentence.

Under the First Step Act, it is likely not enough for the Court to find at sentencing that defendant has been convicted of a qualifying predicate offense. Instead, the defendant will likely argue that the government must prove beyond a

11

reasonable doubt that—as a result of his prior conviction—he served more than 12 months in prison and that he was released from prison within 15 years of commencement of the instant offense. *See* 21 U.S.C. §§ 802(57)-(58), 841(b)(1)(B). The defendant may stipulate to these elements, but at present the government does not know how the defendant will chose to proceed.

In the event the defendant chooses not to stipulate to these elements, the government requests that the Court bifurcate the trial. Should the defendant be convicted of either Count 1 or 2 of the Indictment, the government believes the Court should hold a second phase of the trial, during which the United States will present evidence regarding defendant's prior convictions, including the amount of time he served and the date of his release from prison. A bifurcated trial will ensure that the defendant is not prejudiced on the question of his guilt on Counts 1 or 2 by the jury hearing evidence of his past crimes.[2] The parties have submitted proposed jury instructions and a special verdict form for this second phase of the trial.

Dated: September 19, 2022                    Respectfully Submitted,

ANDREW M. LUGER
United States Attorney


*s/ Nathan H. Nelson*

BY: NATHAN H. NELSON
Assistant United States Attorney

---

[2] The government believes the Court had intended to follow this procedure at trial in *United States v. Barnes*, Crim. No. 18-120 (NEB/KMM) before the defendant stipulated to the facts regarding his prior convictions.